*EX REL.* McWHIRTER v. THE TOWN OF NEWBERRY.

1. CONSTITUTION—ELECTION FOR CORPORATE PURPOSES—FREEHOLD-
ERS.—The Constitution of 1895, sec. 13, art. II., provides that the
General Assembly, in authorizing a special election in a city or town
for the purpose of issuing bonds for water works, &c., shall prescribe
as a condition precedent to such election a petition from the majority
of the freeholders of such city or town.
2. ACT 2D MARCH, 1896, 22 STAT., 83, CONSTRUED.—So much of the
act of 2d March, 1896, 22 Stat., 83, as requires a petition signed by a
majority of the freehold *voters* of a town for an election on the ques-
tion of bonding the town for water works, &c., is unconstitutional, in
so far as it requires the petition to be signed by a majority of the free-
hold *voters* of such town, and the statute may be read as if the term
"freeholders" only were used.
3. ACT 9TH MARCH, 1896, 22 STAT., 88, CONSTRUED—BONDS FOR WATER
WORKS.—The act of 9th of March, 1896, 22 Stat., 88, is in accord with
sec. 13 of art. II. of Constitution of 1895, and a town council may
order an election, under said act, on the question of issuing bonds for
water works and electric light plant upon a petition signed by a ma-
jority of the freeholders of such town.
4. CASES DISTINGUISHED.—*Harshman* v. *Bates*, 92 U. S., 569; *County
of Cass* v. *Johnson*, 95 U. S., 360; *Harrington* v. *Plainview*, 27 Minn.,
224; *Plainview* v. *Winona*, 36 Minn., 505; *Town of Mentz* v. *Cook*,
108 N. Y., 504; and *People* v. *Smith*, 45 N. Y., 772, *distinguished* from
this.

Petition for injunction addressed to this Court in its orig-
inal jurisdiction by George McWhirter, praying that the
town council of the town of Newberry be enjoined from
ordering an election on the question of issuing bonds for
erection of water works and electric light plant. The fol-
lowing is the petition:

I. That he is a taxpayer and a freeholder residing in the
town of Newberry, in the county of Newberry, and State
aforesaid, and that his name appears as such upon the tax
books of said town.

II. That the respondents as mayor and aldermen com-
pose the town council of the town of Newberry, a muni-
cipal corporation of this State chartered by an act of the

General Assembly of the State, entitled "An act to renew and amend the charter of the town of Newberry," approved December 21st, 1894.

III. That the General Assembly of the State of South Carolina at its last session passed an act, entitled "An act to authorize all cities and towns to build, equip and operate a system of water works and electric lights and to issue bonds to meet the cost of same," wherein among other things it is provided that the cities and towns of the State may issue bonds for the purpose of constructing and operating water works systems and electric light plants upon compliance with the conditions prescribed in said act.

IV. That for the purpose of complying with the conditions prescribed in said act, petitions addressed to the town council of the town of Newberry, and praying said town council of the town of Newberry to order an election upon the question of the issue of bonds to the amount of $33,000 of the character and description named in said act of the General Assembly hereinbefore referred to, have been circulated in said town for the signatures of the freehold voters of said town, and as your relator has been informed the said petitions have received the signatures of a majority of the freehold voters of said town.

V. That said petitions have been presented to said town council for their action thereon, and that under the provisions of said act of the General Assembly the only duty imposed upon the said town council before ordering the election petitioned for is to ascertain whether a majority of the freehold voters of the town have signed said petition.

VI. That at the time of filing the original petition herein your relator had been informed and believed that said town council had determined that a majority of the freehold voters of said town had signed said petition, and had by resolution directed their attorney to prepare and submit to them for passage an ordinance ordering an election in accordance with the prayer of said petitioners.

VII. That your relator is also informed and believes

that petitions have been circulated in said town for signatures of freehold voters and freeholders, and that the same have been numerously signed—that is to say, that a petition in the words and figures following has been signed by eighty-four freehold voters, viz: "To the Honorable the Mayor and Aldermen of the town of Newberry, S. C.: The undersigned, freehold voters of the town of Newberry, in the county of Newberry, State of South Carolina, respectfully petition your honorable body to order an election, in accordance with an act of the General Assembly of South Carolina, entitled 'An act to authorize all cities and towns to build, equip and operate a system of water works and electric lights and to issue bonds to meet the cost of same,' and approved the 2d day of March, 1896, on the question of issuing coupon bonds to the extent of $42,000, bearing interest at a rate not to exceed six per centum per annum, and payable in any legal tender money of the United States, forty years after date, to meet the cost of constructing a system of water works and a system of electric lights, for the use and benefit of said town; and for the purpose of electing three commissioners of public works." And that another petition in the words and figures following has been signed by sixty-two freeholders, who are voters, viz: "To the Honorable Mayor and Aldermen of the town of Newberry, S. C.: We, the undersigned resident freeholders of the town of Newberry, owners of real property in said town, respectfully petition that you order an election, as required by law, for the purpose of allowing the citizens of said town to vote upon the question of whether the town of Newberry shall issue bonds not exceeding $42,000 for the purpose of establishing a system of water works and electric light plant."

VIII. That your relator is now informed and believes that said petitions set out in paragraph VII. of this petition have been presented to the said town council, and that said town council have by resolution recognized said petitions as sufficient authority for them to order the election prayed

for, and have directed their attorney to prepare and submit to them for passage an ordinance ordering an election in accordance with the prayer of said petitioners.

IX. That your relator alleges on information and belief that the freeholders of the town of Newberry as shown by the tax books of said town largely exceed in number the freehold voters of said town—there being 272 freeholders, of which number 160 are voters.

X. That your relator alleges that the said act of the General Assembly, set out by its title in the third paragraph of this petition, is in conflict with the Constitution of the State, ratified on the 4th day of December, A. D. 1895, in this, that said act prescribes as a condition precedent to the holding of the election therein provided for upon the question of the issue of bonds for constructing and operating a water works system, that the petition of a majority of the freehold voters of said town for said election to be held shall be sufficient; whereas the said Constitution, in article II., section 13, distinctly provides, that "In authorizing a special election in any incorporated city or town in said State for the purpose of bonding the same, the General Assembly shall prescribe as a condition precedent to the holding of said election, a petition from a majority of the freeholders of said city or town, as shown by its tax books;" and also in this, that said act confers upon the cities and towns of the State full power and authority to construct and operate water works and electric light works; whereas the Constitution, in the 5th section of article VIII., provides: "That no such construction or purchase shall be made, except upon a majority vote of the electors in said cities or towns, who are qualified to vote on the bonded indebtedness of said cities or towns."

Wherefore your relator prays that said act may be adjudged to be in conflict with the Constitution of the State, and that the respondents may be perpetually enjoined and restrained from ordering said election, or any other, under

the power attempted to be conferred upon them by the said act of the General Assembly.

The respondents made return as follows:

I. That the allegations contained in paragraphs from 1 to 9, inclusive, of the amended petition are true.

II. That your respondents admit that the petition of the freehold voters mentioned in the relator's petition herein have been presented to them, as alled in the 6th paragraph of the petition, but these respondents state that they have not acted upon them, nor made any order in relation thereto.

III. That the petitions filed with them, praying that an election be ordered on the question of issuing said bonds, and referred to in the 7th paragraph of the relator's amended petition, were circulated at the same time, were presented to them at the same time, were acted upon together by the council, and were considered as a part of the same general plan.

IV. That the petitions acted upon by them meet the requirements of both the act of the General Assembly and the provision of the Constitution referred to in the relator's petition.

V. That these respondents also submit that, under an act of the General Assembly entitled "An act to authorize special elections in any incorporate city or town of this State for the purpose of issuing bonds for corporate purposes," approved the 9th day of March, A. D. 1896, their action hereinbefore set forth should be sustained.

Wherefore they pray that the petition of the relator be dismissed, and the order of injunction granted herein be dissolved.

Accompanying said returns was the following affidavit:

Personally appears Charles A. Bowman, who, being duly sworn, says, that he is clerk and treasurer of the town council of the town of Newberry, S. C., and is the custodian of all moneys, books, and records of said town. That

the tax books of said town show that there are 272 free-
holders therein. That of this number 160 are voters in
said town. That there has been filed with him, as clerk
and treasurer as aforesaid, petitions asking the said town
council to order an election, as set forth in the petition of
the relator, except that said petition ask that an election
be ordered on the question of issuing bonds to the extent of
$42,000, for the purpose of constructing a system of water
works and electric lights for said town, instead of $33,000,
for water works as alleged in the petition. That said pe-
titions are signed by 146 resident freeholders in said town,
and of this number eighty-four are voters. That a ma-
jority of freeholders of said town and a majority of free-
hold voters of said town have signed said petitions.

*Messrs. Mower & Bynum*, for petitioner, cite: Con. of
1895, art. I., sec. 9; art. II., secs. 12, 13; art. VIII., sec. 5;
water works act of 1896; 92 U. S., 569; 27 Minn., 224; 36
Minn., 505; 108 N. Y., 504; 134 U. S., 632; 45 N. Y., 772;
Cooley on Con. Lim. (6th ed.), 210.

*Messrs. Hunt & Hunt*, for respondent, cite: Con. of 1895,
art. II., sec. 13, 22 stat., 83, 88; 1 Gray (Mass.), 21; 5 Gray
(Mass.), 485; 103 U. S., 416; 13 S. C., 58; Con. of 1895,
art. VIII., sec. 5.

Aug. 1, 1896. The opinion of the Court was delivered by

Mr. Chief Justice McIver. This is an application ad-
dressed to this Court, in the exercise of its original juris-
diction, by the relator, a resident taxpayer and freeholder
of the town of Newberry, praying for an injunction to
restrain the respondents, constituting the town council of
said town, from ordering an election to determine the ques-
tion whether the town of Newberry shall issue its bonds to
obtain the means of establishing a system of water works
and electric light plant in and for said town. It will be
seen from the petition (which, with the return and affidavit
annexed thereto, should be incorporated in the report of

this case) that the facts are undisputed, and that the application is based upon the ground that the act of the General Assembly, under which the respondents are assuming to act; is in conflict with the provisions of the present Constitution, and, therefore, affords no authority for the action which the respondents are proposing to take.

Sec. 5 of art. VIII. of the Constitution reads as follows: "Cities and towns may acquire by construction or purchase, and may operate, water works systems and plants for furnishing water and lights to individuals, firms, and private corporations for reasonable compensation: *Provided*, That no such construction or purchase shall be made except upon a majority vote of the electors in said cities or towns, who are qualified to vote on the bonded indebtedness of said cities or towns." Sec. 13 of art. II. of the Constitution contains the following provisions: "In authorizing a special election in any incorporated city or town in this State for the purpose of bonding the same, the General Assembly shall prescribe, as a condition precedent to the holding of said election, a petition from a majority of the freeholders of said city or town as shown by its tax books;" and after proceeding to declare who shall be qualified to vote at such election, concludes as follows: "and a vote of the majority of those voting in said election shall be necessary to authorize the issue of said bonds." So that the Constitution plainly provides that the General Assembly, in authorizing a special election for the purpose referred to, shall prescribe, as a condition precedent to the holding of such election, a petition from the majority of "the freeholders of said city or town, as shown by its tax books;" and it is contended by the relator that this condition precedent has not been complied with, and hence that respondents have no legal authority to take any action in the premises. It seems that the General Assembly has passed two acts which, it is claimed, are applicable to this question: *first*, an act entitled "An act to authorize all cities and towns to build, equip and operate a system of water works and elec-

tric lights, and to issue bonds to meet the costs of the same," approved 2d of March, 1896, 22 Stat., 83; and *second*, an act entitled "An act to authorize special elections in any incorporated city or town of this State for the purpose of issuing bonds for corporate purposes," approved 9th March, 1896, 22 Stat., 88. By the first act it is provided: "That before any election shall be held under the provisions of this act, a majority of the freehold voters of said city or town shall petition the said city or town council that the said election be ordered;" while in the second act above referred to the provision is: "That it shall be the duty of the municipal authorities of any incorporated city or town of this State, upon the petition of a majority of the freeholders of said city or town, as shown by its tax books, to order a special election in any such city or town for the purpose of issuing bonds for any corporate purpose set forth in said petition." It appears from the petition that two petitions, set forth in paragraph 7 of the relator's petition herein, have been presented to and filed with the town council of Newberry—one purporting to come from "the undersigned freehold voters of the town of Newberry," asking that an election be ordered in accordance with the provisions of the act first above referred to, approved 2d of March, 1896; and the other purporting to come from "the undersigned freeholders of the town of Newberry," praying that an election be ordered, "as required by law," without referring to any specific act of the General Assembly, for the purpose of allowing the citizens of said town to vote upon the question whether the town of Newberry shall issue bonds not exceeding $42,000, for the purpose of establishing a system of water works and electric light plant. It also appears from the affidavit of the custodian of the books and records of the town, which is not controverted: "That the tax books of said town show that there are 272 freeholders therein; that of this number 160 are voters in said town;" and that the petitions above referred to are signed by 146 resident freeholders in said town, and of this number eighty-four are

voters; and that a majority of the freeholders of the said town, as well as a majority of the freehold voters of said town, have signed said petitions. This shows that all the conditions precedent to the ordering of the election have been complied with, for the petitions have been signed not only by a majority of the freehold voters, as required by the act approved 2d March, 1896, but also by a majority of the freeholders, as required by the constitutional provision.

It is contended, however, by the relator, that inasmuch as the act of 2d March, 1896, goes beyond the provision of the Constitution, by authorizing the election to be ordered upon the petition of a majority of "the freehold *voters*," while the Constitution provides that the petition shall be signed by a majority of "*the freeholders*," the act is unconstitutional, and, therefore, affords no authority for ordering the election. Conceding that, in so far as the act goes beyond the provisions of the Constitution, it is unconstitutional, and so far as the excess is concerned, it is a nullity, the question still remains whether that necessarily renders the whole act a nullity. There can be no doubt that the fact that an act of the legislature is unconstitutional in some of its features, does not necessarily render the whole act unconstitutional. *Barry* v. *Iseman*, 14 Rich., 129; *Wardlaw* v. *Buzzard*, 15 Rich., 158, in which latter case it was said, that even the same section of an act might be unconstitutional, when applied to one class of cases, and constitutional when applied to another class. See, also, *Curtis* v. *Renneker*, 34 S. C., 468, where the same doctrine is recognized. It may be, therefore, that while so much of the act of 2d March, 1896, as prescribes that the petition for an election shall be signed by a majority of voters as well as freeholders, is clearly in excess of the constitutional power conferred, and, therefore, null and void, yet, eliminating such excess as a nullity, the act may remain good for so much of such requirement as is in conformity to the Constitution. In other words, that said act may be read as if it did not contain the word

"voters," and only required a majority of the freeholders, as provided in the Constitution, to sign such petition; for the conceded fact being that the petitions praying that an election should be ordered, were signed by a majority of the freeholders, as well as by a majority of the voters, the constitutional requirement has been complied with, and its efficiency cannot be impaired by the fact that the petitions were also signed by a majority of the voters; which was a mere work of supererogation. But be that as it may, it seems to us clear that the action which the respondents are about to take, and which the relator seeks to enjoin, can be fully supported by the second act above referred to, approved 9th March, 1896, which is unquestionably in direct conformity to the provisions of the Constitution. That act, which, as we have seen, is entitled "An act to authorize special elections in any incorporated city or town of this State, for the purpose of issuing bonds for corporate purposes," expressly provides, in the express language of sec. 13 of art. II. of the Constitution, as a condition precedent to the holding of such an election, "a petition of a majority of the freeholders of said city or town as shown by its tax books;" and the undisputed evidence in this case is that a petition, so signed, has been presented to and filed with the town council of Newberry, praying that an election may be ordered, as required by law, for the purpose of allowing the citizens of the said town to vote upon the question of whether the town of Newberry shall issue bonds not exceeding $42,000, for the purpose of establishing a system of water works and electric light plant. If, then, the establishment of a system of water works and electric light plant can properly be regarded as a corporate purpose, of which there can be no doubt, under the express provisions of sec. 5 of art. VIII. of the Constitution, herein above set out, authorizing cities or towns to acquire by construction or purchase systems of water works and plants for furnishing lights, and to operate the same, it is quite clear that this last mentioned act, the constitutionality of

which has not been, and, so far as we can see, cannot be, questioned, affords full authority for the town council of Newberry to order the election as prayed for in the petition.

Counsel for relator, in their argument here, contend that there is a wide difference between freeholders of a town and freehold voters of such town; and that the one cannot be substituted for the other, and has cited several cases to sustain his proposition. While we are not disposed to question the proposition contended for, when applied to a proper case, it may not be amiss to notice the cases which he has cited. The first case to which he refers is *Harshman* v. *Bates*, 92 U. S., 569, in which it was held, amongst other things, that where the Constitution of Missouri, which forbids the General Assembly from authorizing any county, city or town to become a stockholder in, or to loan its credit to, any corporation, unless two-thirds of the qualified voters of such county, city or town shall, at a regular or special election, assent thereto, an act of the General Assembly only requiring the assent of two-thirds of the qualified voters, "*who vote at such election*," was unconstitutional. But that case, so far as the point mentioned is concerned, was expressly overruled by the subsequent case of *County of Cass* v. *Johnston*, 95 U. S., 360; Waite, C. J., in delivering the opinion of the Court, saying: "All qualified voters who absent themselves from an election duly called, are presumed to assent to the expressed will of the majority of those voting, unless the law providing for the election otherwise declares." The same doctrine was recognized in *Morton* v. *Comptroller General*, 4 S. C., at page 462, *et seq.;* and again in Bond Debt Cases, 12 S. C., at page 285. See, also, Cooley on Cons. Lim., 141. The next two cases referred to are *Harrington* v. *Plainview*, 27 Minn., 224, and *Plainview* v. *Winona &c. R. R. Co.*, 36 Minn., 505, which hold that, where the Constitution requires a question of local taxation to be submitted to the *electors*, a statute empowering *resident taxpayers* to authorize a town to issue bonds in aid of a railroad, was unconstitutional, for the very obvious reason that the statute

undertook to confer upon resident taxpayers the power to determine a question which by the Constitution was conferred upon a very different class of persons—electors. In the *Town of Mentz* v. *Cook*, 108 N. Y., 504, subsequently recognized by the Supreme Court of the United States in *Rich* v. *Mentz Township*, 134 U. S., 632, where the statute of 1869 empowered a county Judge, upon the petition of a majority *of the taxpayers* of any municipal corporation, to proceed in the manner prescribed by the statute to determine whether the bonds of the town of Mentz should be issued in aid of a certain railroad, which act was amended by the act of 1871, so as to confer such jurisdiction upon the county Judge only when the application was made by a majority of the taxpayers, "not including those taxed for dogs or highway tax only," it was held that a petition framed under the act of 1869, and in disregard of the additional provisions contained in the act of 1871, which was presented after the passage of the act of 1871, failed to confer any jurisdiction upon the county Judge, inasmuch as it failed to show that a majority of such taxpayers as were then alone authorized to make the application had done so. The only remaining case cited is *People* v. *Smith*, 45 N. Y., 772, which simply holds that a petition for an election must be in strict conformity to the act providing for an election. It is to be observed that in none of these cases was it made to appear, as it was in the case under consideration, that all of the requirements, both of the Constitution and of the acts, were complied with, and hence we are unable to perceive how those cases can effect our present inquiry. For even if it should be conceded that our first act above referred to, approved 2d March, 1896, in going beyond the constitutional requirement that, as a condition precedent to the ordering of an election, a petition of a majority of the freehold voters, instead of a petition of a majority of the freeholders, should be presented, failed to confer authority upon the respondents to order the election; yet the second act, approved 9th March, 1896, being strictly in accordance with the

Constitution, certainly was sufficient to confer the requisite authority. The essential fact involved in the condition precedent being that an application from a majority of the freeholders to the municipal authorities to order an election being conceded by the pleadings and proceedings, we cannot doubt the authority of the town council to order the election as prayed for.

The judgment of this Court is, that the petition for injunction be dismissed.