# Richmond.

## VIRGINIA PORTLAND CEMENT CO. v. LUCK'S ADMINISTRATOR.

### January 12, 1905.

1. DECLARATION—*Sufficiency—Demurrer.*—If a declaration is sufficient to inform the defendant of the nature of the demand made upon him, and states sufficient facts to enable the court to say that if the facts stated are proved, the plaintiff is entitled to recover, it is good on demurrer.

2. INSTRUCTIONS—*Harmless Error—Verdicts.*—The verdict of a jury will not be set aside for an error in an instruction, if the court, upon looking at all the instructions as a whole, can see that the case was fully and fairly submitted to the jury, and that they could not have been misled by the error.

3. MASTER AND SERVANT—*Out of Line of Employment—Duty of Master.*— If the servant is working outside the scope of his employment, but under the direction and for the benefit of his master, greater care is required of the master in giving warning of dangers than if he was working in the regular line of his employment.

4. MASTER AND SERVANT—*Unsafe Place—Precaution of Servant—Negligence—Case at Bar.*—If the danger to which the servant is exposed through the negligence of the master is one which a servant of ordinary prudence would believe could be entirely avoided by the use of certain additional precautions, he does not, by continuing his service, lose his right to recover for damages suffered by him while using such precautions. Whether the servant has been guilty of such negligence as to proximately cause his injury is a question for the jury. In the case at bar the servant was assigned to a duty which necessitated his rolling a truck over a dangerous hole in the floor of a factory. The master knew of the hole and of its danger. Near the hole was a board which seemed to fit the opening, and had apparently been used for that purpose, but it was not safe simply to lay the board over the hole, without nailing

it down, as immediately beneath the hole a large screw ran which conveyed cement from one portion of the building to another, and this was liable to become clogged, and to prize up the covering. This fact was known to the master but not known or communicated to the servant. The servant laid the board over the opening, and while rolling the truck over it, the board from some cause moved, and his foot passed into the hole and came into contact with the screw, which inflicted the injury for which this action was brought. The jury having found for the plaintiff, this court refuses to set aside the verdict as contrary to the evidence.

5. MASTER AND SERVANT—*Unsafe Place—Remaining in Service—Negligence, Question for Jury.*—Where the evidence is conflicting, or there is any room for doubt as to whether a servant is chargeable with negligence by remaining in service after knowledge of the condition of the instrumentalities of the business, it is for the jury to determine whether a man of ordinary prudence would have regarded it as negligent to perform the particular service in view of the circumstances.

Error to a judgment of the Circuit Court of Augusta county, in an action of trespass on the case, wherein defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The facts sufficiently appear in the opinion.

The following instructions were given to the jury:

"*Instruction for Plaintiff No. 1.*

"The court instructs the jury that it was the duty of the defendant company to use all reasonable care to provide and maintain suitable structures, instrumentalities, machinery and appliances, and not to expose its employees to risks beyond those incident to the employment, and not to expose them to risks beyond those risks in contemplation at the time of the contract of service; and its employees had the right to presume that these duties had been performed; and for injuries to its employees resulting from a breach of this duty, the defendant company is

liable in damages. And if the jury believe from the evidence in this case that the breach of this duty of the defendant company was the proximate cause of the injuries that resulted in the death of William Luck, while in the employment of the said defendant company, then the said company is liable in damages in this cause. *N. & W. R. R. Co.* v. *Ampey,* 93 Va. 117, and authorities cited.

### "*Instruction for Plaintiff No. 2.*

"The court instructs the jury that although they may believe from the evidence in this case that William Luck knew that the passageway on the premises of the defendant company, under which the conveyancer that did the mischief ran, and that this conveyancer had been exposed by the company for the purpose of unclogging it, and that this passageway was on that account in an unsafe condition; yet, if they believe from the evidence that the danger occasioned thereby was not so imminent that a reasonably prudent man would not have attempted to go over it as William Luck did, in doing the work that he was directed to do by the defendant company, and further believe from the evidence that the use of the said passageway by Luck in doing the work that he was directed to do by the defendant company was natural and necessary, and that said Luck, in going along said passageway and over the said conveyancer, used such reasonable precaution as a reasonably prudent man would have exercised in so doing, and was injured, and from which injuries he died, then the plaintiff is entitled to recover damages in this case. *N. & W. R. R. Co.* v. *Ampey,* 93 Va. 117, 25 S. E. 226, and authorities cited.

### "*Instruction for Plaintiff No. 3.*

"The court instructs the jury that William Luck is presumed

to have exercised due and proper care at the time he was injured, and the burden of proving that he was negligent is upon the defendant, unless such negligence appears from the plaintiff's evidence.

## "*Instruction for Plaintiff No. 4.*

"The court instructs the jury that if they believe from the evidence that the plaintiff is entitled to recover, that then, in ascertaining and fixing the damages in this case, they should find the same with reference—

First. To the pecuniary loss sustained by Mrs. Minnie Luck, widow of Wm. Luck, deceased, and her child, by the death of Wm. Luck, fixing the sum at such sum as would be equal to the probable earnings of the said Wm. Luck, taking into consideration the age, business capacity, experience, habits, energy and perseverance of the deceased, during the lifetime of the said Mrs. Minnie Luck and child, if he had not been killed.

"Second. By adding thereto compensation for the loss of his care, attention and society to his wife and child; and,

"Third. By adding such further sum as they may deem fair and just by way of solace and comfort to his said widow and child for the sorrow and suffering and mental anguish occasioned to them by his death."

## "*Instruction for Defendant No. 1.*

"The court instructs the jury that the burden of proving his case is upon the plaintiff, and that he must prove it by a preponderance of evidence in order to entitle him to a recovery.

## "*Instruction for Defendant No. 2.*

"The court instructs the jury that, even though they may believe from the evidence that the defendant was guilty of

negligence, yet if they shall further believe from the evidence that the injury to the plaintiff's intestate was the proximate result of his own negligence, he cannot recover.

### "Instruction for Defendant No. 3.

"The court instructs the jury that contributory negligence on the part of an employee injured through the employer's negligence is the want of ordinary care and prudence without which the injury would not have occurred; and that, if the jury shall believe from the evidence that the plaintiff's intestate, Luck, was guilty of contributory negligence in running the truck over the conveyor at the time of the accident, then the plaintiff cannot recover.

### "Instruction for Defendant No. 4.

"The court instructs the jury that where a person voluntarily enters the service of another he assumes all the risk usually incident to such employment, and is presumed to have contracted with respect thereto. And if the jury believe from the evidence that the risk in this case was of this character, and that it was open and obvious, the plaintiff is not entitled to recover and the jury must find for the defendant.

### "Instruction for Defendant No. 5.

"The court instructs the jury that where an employee is confronted with two methods of performing work, the one safe and the other dangerous, he owes a positive duty to his employer to pursue the safe method, irrespective of the degree of danger which may be involved in the unsafe method, and any departure from the path of safety will prevent his recovery in the event he is injured. So that if the jury shall believe from the evi-

dence that it was safe for the plaintiff's intestate to wheel his truck over the covering across the conveyor, and that it was unsafe for him to lay down a board across the conveyor and wheel his truck over said board, and that the plaintiff's intestate adopted the latter course, and was thereby injured, then the plaintiff cannot recover.

### *"Instruction for Defendant No. 6.*

"The court instructs the jury that an employee who knows the unsafe condition of the place in which he is working is not compelled to continue the work; but, if he does continue it, without exercising ordinary prudence and care for his own safety, then he must be hèld to have assumed not only the risks ordinarily incident to the service when he entered upon it, but such as became known to him during the progress of the work, or which were readily discernible to a person of his age and capacity in the exercise of ordinary care. So that, if the jury shall believe from the evidence that the plaintiff's intestate knew of the unsafe condition of the conveyor, then he was not compelled to continue his work about said conveyor; and if they shall believe that, so knowing, he continued his work without ordinary prudence and care for his own safety, then he assumed not only the risks incident to his work there, but also the risks which became known to him during the progress of his work or which were readily discernible to a person of his age and capacity in the exercise of ordinary care.

### *"Instruction for Defendant No. 7.*

"The court instructs the jury that if they shall believe from the evidence that the plaintiff's intestate, William Luck, was in the employment of the defendant as a teamster on the yard, and that his duties as such did not require him to truck cement

across the conveyor, but that the trucking by him of cement across the conveyor was a voluntary act on his part, and if they shall further believe from the evidence that while engaged in the performance of such voluntary act he received the injury complained of, then the plaintiff cannot recover, and the jury must find for the defendant.

### "*Instruction for Defendant No. 8.*

"The court instructs the jury that, where the employee's own voluntary act has placed him in perilous position, he must, in general, bear the consequences of his own recklessness or negligence. And if the jury shall believe from the evidence that the plaintiff's intestate, knowing the open conveyor to be a dangerous place, voluntarily undertook to pass over it on a temporary passway constructed by himself, and in consequence was injured, and died from such injury, then the plaintiff is not entitled to recover."

*Patrick & Gordon,* for the plaintiff in error.

*Braxton & Wayt* and *Curry & Glenn,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The administrator of William Luck, deceased, brought this action in the Circuit Court of Augusta county, to recover damages of the Virginia Portland Cement Company for the death of the deceased, caused, as alleged, by the negligence of the defendant.

The action is predicated on the negligence of the defendant in keeping in unsafe repair its premises where the deceased, in the discharge of his duties, was required to work, the specific

negligence alleged being the failure of the defendant to keep sufficiently coverd up and protected a conveyor which crossed a passageway, over and along which the deceased, on the occasion of the injuries from which he died, was required to work. At the trial the plaintiff recovered a verdict and judgment for $6,000, and this judgment is before us for review upon a writ of error awarded the defendant.

The declaration contains four counts. In the first it is clearly stated that the defendant company knowingly, etc., failed and neglected to keep said conveyor securely covered so as to furnish a reasonably safe and proper place for the plaintiff's intestate to work, and that the said intestate exercised due and proper care, and was wholly without fault or neglect on his part. The second count states that the defendant company tore up the covering over the conveyor, and the company itself, having put the conveyor in that condition, left it open and in a dangerous condition until after the accident to the deceased. In the third count, as in the first and second, the business conducted by the defendant is stated; that in the conduct of its business the defendant used a conveyor, which is described; that the deceased was engaged in trucking cement across the conveyor; that it was the duty of the defendant to provide a safe place for the deceased to work in handling the cement, etc.; and it is charged that the company was notified of the condition of the conveyor, and that it promised to put it in proper condition and failed to do so, etc. And in the fourth count the allegations as to the business conducted by the defendant are repeated, and it is averred that the company knew of the unsafe condition of the conveyor and failed to put it in repair, etc., in consequence of which the deceased received the injuries from which he died. So that in each of the counts it is alleged that the company had failed to perform the duty which it owed to the deceased to keep its premises in reasonably safe repair,

stating in what respect the duty existed and wherein the company had failed to perform the duty, and either charges that the company had notice of the unsafe condition of its premises in the respect stated, or sets out facts from which it was necessarily to be inferred that the company was aware of the unsafe condition of its premises in the particulars stated in the several counts, and in all of which it is averred, though unnecessarily, that the deceased was without fault in the premises.

We are of opinion that the declaration and each count thereof was sufficient to inform the defendant of the nature of the demand made upon it; states sufficient facts to enable the court to say upon demurrer, if the facts stated were proved, whether the plaintiff would be entitled to recover; and, therefore, the demurrer to the declaration was properly overruled. *Hortenstein* v. *Va.-Car. Ry. Co.*, 102 Va. 914, 47 S. E. 996.

The circumstances under which the deceased received the injuries from which he died are as follows: The defendant company is engaged in the manufacture of cement in the county of Augusta, and in its business it is necessary to use a large amount of machinery and employ a large number of men, some of the machinery used being of a more or less dangerous character. The plant is organized into different departments, and a separate force of men are employed in these several departments, though it seems that they are not required to work in and confine themselves to the departments in which they are employed. One department is known as the operating department, another as the construction department, and there are several others; but it is only necessary to refer to the two departments named in this opinion.

In the operating department the cement is manufactured, and in this department is what is known as the stockhouse, in which the cement is packed in bags and barrels for shipment. The construction department has charge of the work of making

the roads, constructing buildings and other things necessary to equip the plant and keep it in working order. The stockhouse referred to is a large building about 250 x 250 feet, in which there are a number of large bins for storing cement, and in the centre is a space in which the cement is handled. At either end of this building, between the bins and the outer walls, runs a passageway four or four and a half feet wide, and across the. building at either end, at the inner line of this passageway, about four or four and a half feet from the outer wall, runs a large screw, about nine inches in circumference, and known as a conveyor. The screw runs in a trough about fourteen inches square on the outside, and ten inches on the inside, and its motive power is obtained from a room in the stockhouse known as the motor room. The cement and plaster are put in this ten-inch trough from the bins, and from other openings along and over the screw, and the revolutions of the screw convey it from one point to another in the house. Between the motor room referred to and one of the bins, numbered 13, is a space from four to six feet, two inches (as variously stated in the testimony) wide. In passing from the centre of the stockhouse through this space into the four, or four and a half, foot passageway at that end of the house, from which the cement is loaded on to a wagon at the door, the conveyor has to be crossed. The conveyor is covered by boards nailed down flush with the floor of the building, but it is necessary frequently to take up sections of this covering to get at the conveyor in order to repair it, as it is very frequently clogged up and often prizes up the covering over it, and, when it becomes choked, it is often relieved by putting plaster in the cement, as some forms of cement require a mixture of plaster. On the day before the accident out of which this suit arises, about fourteen inches in length of the covering of the conveyor had been removed in the passageway between the motor room and bin No.

13, in order to repair the conveyor by putting in at that point what is known as a "hanger," and the conveyor was thus left exposed until after the accident on the following day.

Among other employees engaged in the stockhouse are men whose business it is to carry various materials, cement, plaster, etc., from one point to another in the house on hand-trucks, which are from twenty to twenty-four inches wide.

The deceased, William Luck, was a teamster on the yard of the defendant company, in charge of a two-horse wagon and team, and was assisted by one Samuel Webb, in connection with the construction department. His duty was to haul the materials of various sorts used in that department. The foreman of the company over the deceased was a Mr. Teabo, and on the occasion of this accident one Cooper Irving was in charge of a gang of hands making cement work on the yard of the company. The deceased had general orders from Teabo to always go and haul cement from the stockhouse whenever called' on to do so by Irving, or the person in charge of the concrete work, and Irving had, just prior to this accident, put in an order with the boss of the stockhouse, Clifton, for a large amount of cement, and it was the deceased's duty, with his team, to haul it to Irving as needed.

On the morning of the accident the deceased and his helper, Webb, had been hauling staves on the yard, and had finished hauling staves between 11 and 12 o'clock. When they finished, Irving said to the deceased that he wanted ten sacks of cement as quick as he could get it, and told deceased to go to the stockhouse for it. The deceased drove immediately to the stockhouse door with his wagon and team, and he and Webb went into the stockhouse and told Clifton, who was in charge of the stockhouse, that they wanted ten bags of cement for the concrete work, and Clifton, stating that his men were engaged and did not have time to truck the cement out, told the deceased

and Webb where the cement was, and directed them to go and get it and truck it out, he (Clifton) knowing at the time that the conveyor across the passageway was uncovered, and that the cement had to be trucked out through this passageway. Whereupon the deceased took a truck, went to where the cement was, and Webb loaded the truck. They proceeded along the passageway, the deceased pushing the truck, until they reached the conveyor, and seeing that they could not get across it without some covering over the opening in it, and seeing sitting near by a board which seemed to fit the opening and appeared to have been used for that purpose, they laid it in the opening, which it fitted, and passed successfully over the conveyor with that load of cement, but when crossing the conveyor with the second load the board moved and left the opening, into which the deceased's foot passed, and his leg was ground off below the knee, resulting in a few hours afterwards in his death from the shock.

At the trial four instructions were given for the plaintiff and eight for the defendant, and exception is taken to the giving of all of plaintiff's instructions; but objection is more particularly made to the first and second, on the ground that they were misleading. It is insisted on behalf of the plaintiff that this court cannot review the instructions, because of the insufficiency of the bill of exceptions taken by the defendant to the giving of the instructions, but we do not deem it necessary to consider this objection, nor to review the instructions at length, as the court is of opinion that the objection to them is without merit. The instructions given for the plaintiff, read in connection with the instructions given for the defendant, could not have misled the jury, and fully and fairly submitted the case to the jury.

The remaining assignment of error is to the refusal of the court below to set aside the verdict of the jury as contrary to the law and the evidence.

It is contended that upon three grounds the verdict should have been set aside. First, that the deceased was a volunteer and assumed the risk incident to the work which he volunteered to perform on the occasion of his injuries; second, that the danger of attempting to truck over the conveyor was incident to his employment and open and obvious; and, third, that the conveyor was sufficiently covered for him to have passed over it in safety.

There is some evidence tending to show that the deceased, at the time of his injury, was doing work outside of the line of his regular employment; but the defendant's evidence admits that what he was doing he was doing under orders from Clifton, who was in charge of the stockhouse. Clifton himself testified that he directed the deceased to get the cement and truck it out, and Irving, another witness for the defendant, says that he told the deceased to go to the stockhouse and get the cement as quickly as he could. In addition to this, it clearly appears from the uncontradicted evidence in the case that the deceased was under general orders to get and haul cement whenever needed for the construction department, and that it was the well-known and recognized practice, as well as the duty, of teamsters to go into the stockhouse and truck out cement when told to do so. So that, if the deceased was working outside of the scope of his employment, he was working under the direction of the defendant, and for its benefit, and greater care was required of the defendant toward him under these circumstances than if he had been working in the regular line of his employment.

On the one hand, the defendant claims that the danger to which the deceased was subjected when obeying the orders of Clifton to truck out the cement, was an open and obvious danger, while on the other hand the claim is as earnestly made that there was no danger at all, but that the trough of the con-

veyor was covered up amply sufficiently for the deceased to
have trucked over, and that it was absolute recklessness in him
in trucking over the place that was open. It is not pretended
that it was not the duty of the defendant to keep this trough
closed, as its own witnesses say that it was to be kept closed,
and that it was in fact usually kept closed; while there is
nothing in the evidence to justify the conclusion that the de-
ceased knew that in order to make it safe to pass over it, it was
necessary to nail down and securely fasten its covering. As
has already been stated, Clifton, in charge of the stockhouse,
knew that the conveyor was exposed on the day before, and he
knew it had not been closed up at the time he directed the de-
ceased to get the cement and truck it out, for it is testified to
that Clifton and a witness examined in the case passed over
and along this passageway over the opening in the conveyor
within five minutes before the deceased received his injuries;
yet he said nothing by way of warning to the deceased of the
unsafe condition of the conveyor when he directed him to
truck the cement wanted by Irving out. It is true that the
evidence shows that hammer and nails were lying close by the
opening in the conveyor, but there is no evidence, as has been
said, that the deceased knew that it was necessary to fasten
down any covering put over the conveyor, nor does it clearly
appear that the hammer and nails were seen by him, or that
they were where he could not have failed to see them; at all
events, that was but a circumstance to be considered by the
jury in determining the question whether the deceased was
guilty of contributory negligence.

As to the contention that the conveyor was sufficiently cov-
ered over for the deceased to have passed it in safety—that
is, that there was room enough for him to have trucked over it
without the use of the board which he placed over the uncovered
space—the evidence in the case overwhelmingly refutes the

contention. In addition to the fact that this board, used by the deceased, was near the opening in the conveyor and had been there for months before, as Clifton himself testifies, and had the appearance of having been used for the very purpose for which the deceased used it, five witnesses testified that the conveyor could not be crossed with the truck without something being put down over the open space. True two witnesses for the defendant testified that they trucked over the conveyor the morning of this accident, but on cross-examination one of them says, "We went over a board that was already there," and the jury might have been well warranted in the conclusion that the board referred to was the very board that the deceased put down over the opening in the conveyor, especially in view of the facts shown, that the board was conveniently near the opening in the conveyor; that it fitted the opening and had the marks of truck wheels across it, as if it had been used for the very purpose that the deceased and Webb put it to. This board, or bridge, as the evidence shows, was made by fastening two boards together with a batten nailed across them, and when laid in the opening over the conveyor it came about a quarter of an inch above the floor, as did the covering on the conveyor where not taken up; but Webb, who was the only person present at the time, says that when the board was put down in the opening, "it fit the place all right." Although the board, as Clifton admits, had been sitting there in the passageway for months prior to the accident, it disappeared thereafter and was not produced at the trial, though called for. By their verdict the jury have accepted the statements of the witnesses for the plaintiff, to the effect that there was no way to truck the cement out along the passageway and over the conveyor without putting down something over the opening in it.

This is not the case of an employee voluntarily undertaking to make repairs that the employer should have made, taking

the consequences of a failure to make them properly, but that of an employee undertaking to perform his duties with unsafe appliances or ways, by using additional precautions. In the first-named case an employee cannot recover for injuries caused by his own negligence in using, without order to do so, appliances which he knows to be dangerously defective or out of repair, or using dangerous machinery in a perilous manner, etc., for, as the authorities say, "obviously he cannot recover for an injury caused by his own negligent workmanship, or bad judgment, especially where he chooses to follow his own judgment in opposition to that of the master." 1 Sherman & Redfield on Neg., sec. 207.

The case here comes under that line of cases referred to by the same learned authors, in section 214, where it is said: "The right of a servant to recover on account of the master's negligence is not affected by notice of any defects other than such as the servant foresaw, or, in the exercise of ordinary prudence, ought to have foreseen, might endanger his safety. If a servant of ordinary prudence would have believed that he could not, in the regular discharge of his duties, be injured by the defect, the servant may properly disregard it, without losing the right to complain if, while pursuing his ordinary course, under such belief, he suffers from such defect. And so, if the danger is one which a servant of ordinary prudence would believe could be entirely avoided by the use of certain additional precautions, the servant would not, by continuing his service, lose his right to recover for damages suffered by him, while using such precautions. But, on the other hand, it is clearly the duty of a servant, in such a case, to use all those additional precautions which ordinary prudence, in view of the risk, would dictate; and the burden of proof would justly be laid upon him to prove that he did so. The servant loses no rights unless he comprehends and appreciates the danger, or, having

the necessary capacity and information, fails to do so by his own fault.   But one who comprehends the danger is nòt excused by his inability to realize the full extent of the injuries which may possibly result therefrom."

In all such cases, whether the servant has been guilty of negligence which is the proximate cause of his injury, is a question for the jury.   As was said in *McMahon* v. *Port Henry Ore Co.,* 24 Hun. 48: "It would seem to be unreasonable that one who has undertaken a service which in itself has some elements of danger, whenever he shall see that the danger has been increased through some negligence of his employer, must either stop his employment or be deemed to have accepted the increased risk.   We do not think that this is the rule; and it seems to us that the plaintiff had the right to go to the jury on the question, whether he was, under the circumstances, justified in going on with his work.   See also *N. Pac. R. R. Co.* v. *Egeland,* 163 U. S. 93, 41 L. Ed. 82, 16 Sup. Ct. 975.

In a note to that case, citing a number of authorities, the familiar rule is stated, viz:   "When the facts are disputed, or more than one inference can be fairly drawn from them as to the care, or want of care, of the plaintiff, the question of contributory negligence is for the jury."   And further, that: "When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been drawn by the jury.   The inferences to be drawn from the evidence must either be certain and incontrovertible, or they cannot be decided by the court."   This is substantially the rule as laid down by this court in *Kimball & Fink* v. *Friend's Admr.,* 95 Va. 125, 27 S. E. 901, and a number of cases following.

"A servant is, as a general rule, excusable for obeying orders in and about his master's business, when such orders are given

by the master, or by one in authority over the servant as a representative of the master, unless the danger to be incurred by such obedience is so plain and manifest that no prudent person would attempt obedience even under orders from one having authority over him. Even though there be apparent danger in obeying the master's order, yet such knowledge on the part of the servant will not defeat a recovery, if the danger is not such as to threaten immediate injury, or if the servant might reasonably have supposed that he could safely work about certain defective machinery by the use of care and caution, and if it is shown that he did use all the care incident to the situation in which he was placed." 20 A. & E. Ency. L. (2 Ed.), pp. 147-8.

In the case at bar the only eye-witness to the accident to the deceased was Webb, who testifies that he and the deceased were just as careful as they could be in trucking over the conveyor, and it is perfectly clear from the evidence that had not the screw operating through the conveyor choked up and displaced the board laid down by Webb and the deceased, which it often did, and which was unknown to the deceased so far as the record discloses, the board would not have been displaced, and the accident would not have happened. The defendant, however, was well aware, not only that the conveyor was open, but that it could not be safely covered without the covering being securely nailed down, and this knowledge was not communicated to the deceased by Clifton when he gave him the order to truck the cement out over the conveyor. Therefore, there was no information which the deceased could have imparted to his employer as to the condition of the conveyor, it did not already possess.

Say Sherman & Redfield on Neg., 186: "The true rule in this, as in all other cases, is that if the master gives the servant to understand that he does not consider the risk one which a

prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon the master's opinion."

The opinion by Riely, J., in *N. & W. R. R. Co.* v. *Ampey*, 93 Va. 133-4, 25 S. E. 216, says: "When the right of a servant to recover for an injury received while using defective machinery or appliances, which the master has provided for his use, is questioned because of previous notice of the defect, the mere isolated fact of risk, is not the only matter to be considered. All the circumstances are to be taken into account. The law does not prescribe a rule so inflexible or unwise as that a servant must forthwith refrain from using a defective machine or appliance, or immediately quit the service of the master upon the discovery of the defect in the machine or appliance, or that he is working by the side of a negligent fellow-servant, upon the pain of conferring immunity upon the master from all liability for an injury incurred in consequence of such defect or incompetency. The true test in all such cases is whether a person of ordinary prudence, acting with such prudence, would, under all the circumstances, have refused to incur the risk." See also *City of Charlottesville* v. *Stratton's Admr.*, 102 Va. 95, 45 S. E. 737, *B. & O. R. R. Co.* v. *McKenzie*, 81 Va. 71.

In the last case, citing *Hough* v. *Ry. Co.*, 100 U. S. 213, 25 L. Ed. 612; *Wabash Ry. Co.* v. *McDaniels*, 107 U. S. 454, 27 L. Ed. 605, 2 Sup. Ct. 932; 2 Thomp. on Neg., 985-6, it is said: "The master, to be exempt from liability, must himself have been free from negligence. He is bound to use ordinary care in supplying and maintaining proper instrumentalities for the performace of the work required, and generally to provide for the safety of the servant in the course of the employment, to the best of his skill and judgment. And if he fail in the per-

formance of his duty in this particular, he is liable to the servant as he would be to a stranger."

"The servant, although he may know that the instrumentalities of the business are not in good repair and condition, is not thereby necessarily chargeable with negligence in remaining in the master's employ and using them, unless real danger therefrom is apparent. In all cases where there is any doubt, the question is for the jury." Wood on Master & Servant, sec. 327.

In sec. 388, the same author says: "In all cases where there is any conflict in the evidence, or any room for doubt as to whether the servant is chargeable with negligence by remaining in service after knowledge of the condition of the instrumentalities of the business, the question is for the jury, and the question for them to pass upon is whether a man of ordinary prudence would have regarded it as negligent to perform the particular service, in view of the circumstances.". See also *Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 Ill. 573, 36 N. E. 572.

The opinion by Buchanan, J., in *Richmond Traction Co.* v. *Clarke*, 101 Va. 392, 43 S. E. 618, says: "The questions, whether the defendant was guilty of negligence in the management of its car, or the plaintiff was guilty of contributory negligence in attempting to cross the street in front of the approaching car under the facts and circumstances of the case, were questions peculiarly within the province of the jury. Their determination of these questions depended largely upon the credibility of the witnesses and the value or weight the jury, who saw and heard them testify, attached to the testimony of each; . . . . and we cannot say that upon the whole case the evidence was plainly insufficient to sustain the verdict."

In the case at bar it is not pretended that the defendant was not negligent in leaving the conveyor in question exposed, and in failing to warn the deceased, when instructed to truck cement over it, of the danger of the situation, and whether the

deceased was guilty of negligence under all the circumstances, was a question properly and fairly submitted to the jury, and their verdict was for the plaintiff.

As to whether or not the deceased was guilty of negligence proximately contributing to his injury, the evidence, to say the least of it, was conflicting, and upon the familiar rule controlling the consideration of evidence by this court, we are bound by their verdict.

The judgment of the Circuit Court is therefore affirmed.

KEITH, P., dissenting.

I cannot concur in the judgment of the court. Plaintiff's intestate was, in the course of his duties, required to place a number of bags of cement upon a truck and move it to a designated point. The opinion of the court states that "the deceased took a truck, went to where the cement was, and Webb loaded the truck: They proceeded along the passageway, the deceased pushing the truck, until they reached the conveyor, and seeing that they could not get across it without some covering over the opening in it, and seeing sitting near by a board which seemed to fit the opening and appeared to have been used for that purpose, they laid it in the opening, which it fitted, and passed successfully over the conveyor with that load of cement, but when crossing the conveyor with the second load the board moved and left the opening, into which the deceased's foot passed, and his leg was ground off below the knee, resulting in a few hours afterwards in his death from the shock." It appears further that when the order to move the cement was given, the cement company knew of the condition of the passageway. The situation then was that the cement company was derelict in failing to exercise ordinary care to provide a reasonably safe place for their employees, in which

to perform their duties; but it further appears that the danger was open and obvious; that the plaintiff's intestate knew the condition of the passageway, and that it was impossible to pass over it with a loaded truck in the condition in which he found it.

To pass the obstacle without repair involved imminent and obvious peril. A screw several inches in diameter, designed to move, and capable of moving, the product of the cement mill, was revolving in an open box, twelve or fourteen inches in width. What was his duty? He might have declined to perform the task assigned to him; he might have reported the situation to his employer, and required repairs to be made; or he could step beyond the line of his employment, assume a duty which had never been required of or entrusted to him, and himself undertake to make the necessary repairs. He resolved upon the latter course. There was a board sitting against the wall. He and his companion placed it over the aperture. One trip was made over it in safety, but in attempting to pass over it the second time the improvised cover moved and left the opening into which the deceased stepped and received the fatal injury.

The majority opinion cites section 214 of Shearman & Redfield on the Law of Negligence.

"The right of a servant to recover on account of the master's negligence is not affected by notice of any defects other than such as the servant foresaw, or, in the exercise of ordinary prudence ought to have foreseen, might endanger his safety. If a servant of ordinary prudence would have believed that he could not, in the regular discharge of his duties, be injured by the defect, the servant may properly disregard it, without losing his right to complain, if, while pursuing his ordinary course, under such belief, he suffers from such defect. And so, if the danger is one which a servant of ordinary prudence would believe could be entirely avoided by the use of certain

additional precautions, the servant would not, by continuing his service, lose his right to recover for damages suffered by him, while using such precautions. But on the other hand it is clearly the duty of a servant, in such a case, to use all those additional precautions which ordinary prudence, in view of the risk, would dictate; and the burden of proof would justly be laid upon him to prove that he did so. The servant loses no rights unless he comprehends and appreciates the danger, or, having the necessary capacity and information, fails to do so by his own fault. But one who comprehends the danger is not excused by his inability to realize the full extent of the injuries which may possibly result therefrom."

I cannot conceive of a more open or obvious danger than that which existed in this case, and by that I mean to say that not only was the defect obvious, and was in point of fact seen by the deceased, but the imminent peril incident to the defect was such as temerity itself could not be blind to. It required no foresight, but the simplest observation of an existing fact, obvious to the senses and known to the decedent, to notify him of the peril in undertaking to pass over such an opening, enclosing a screw propelled by such a force, with a loaded truck. He saw the defect, he knew the peril, and he undertook, of his own accord, to make such repairs as would obviate the danger. Was it ordinary prudence for an employee to act beyond the scope of his authority with respect to a matter as to which he owed no duty, had no knowledge or experience, and to deal with such a situation as that which confronted the deceased? The master in this case gave no assurance. The servant acted upon his own initiative and responsibility.

*McMahon* v. *Port Henry Ore Co.*, 24 Hun. 48, is relied upon in the majority opinion, and I have no fault to find with that decision. In that case it appears that the employee of the defendant was injured by the premature explosion of a blast while

he was engaged in charging a hole.   It appears that the plaintiff was guilty of negligence in three respects—first, in using damp, unglazed powder; second, in drilling a square instead of a round hole; and, third, in using an iron instead of a copper spoon for charging it.   It was held that the mere fact that the plaintiff continued his work with knowledge of these facts did not of itself establish contributory negligence as a matter of law on his part, but only authorized the submission of that question to the jury.   The court said, in the course of its opinion, that "it would seem to be unreasonable that one who has undertaken a service, which in itself has some elements of danger, whenever he shall see that the danger has been increased through some negligence of his employer, must either stop his employment or be deemed to have accepted the increased risk. We do not think that this is the rule.   And it seems to us that the plaintiff had a right to go to the jury on the question whether he was, under the circumstances, justified in going on with his work."

In that case there were elements of danger, but the danger was not so imminent but that reasonable men might entertain different opinions with respect to it.

Another quotation is made by the court in its opinion from Shearman & Redfield on Negligence, section 186.   "The true rule in this, as in all other cases, is that if the master gives the servant to understood that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon the master's opinion."

Does it not clearly appear in this case that the servant did not rely on the master's opinion?   The order to move the truck was given, and that may be said to satisfy the quotation, as giving the servant to understand that the master did not

consider the risk one which a prudent person would refuse to undertake. But the servant did not rely upon it. The risk was so clear, so obvious, so imminent; the task, indeed, so impossible of performance in the condition in which Luck found the passway, that there is no pretension that he relied upon any such implied understanding of the master's opinion as to the risk. It is plain that he exercised and relied upon his own judgment when he undertook to make the needed repairs.

Previous decisions of this court had established, as I supposed, the law upon which I rely.

In *McDonald* v. *Norfolk & Western R. Co.*, 95 Va. 98, 27 S. E. 821, Judge Riely said: "It is a general principle of the law of master and servant that the master shall use ordinary care and diligence to provide reasonably safe and suitable machinery and appliances for the use of the servant, and the master will be held liable for an injury to the servant, which results from the omission to exercise such care and diligence. It is also a settled principle that a servant, when he enters the service of the master, assumes all the ordinary risks of such service. He assumes, as a general rule, all risks from causes which are known to him, or which are open and obvious, and must exercise reasonable care and caution for his own safety while engaged in the master's service. It is likewise well settled that if the servant is injured by reason of a defect in the machinery or appliance furnished by the master for the use of the servant, or its unsuitableness, which defect or unsuitableness is known to him, and the servant, after such knowledge remain in the service of the master, and continue to use the machinery or appliance without giving notice of the defect or unsuitableness to the master, or without any promise by the master to render the same less dangerous, he will be taken to have assumed the risk of all danger to be reasonably apprehended from its use, and is bound to exercise the care and caution which the perils of the business demand."

When the authorities speak of exercising care and caution in using defective machinery or appliances, they obviously mean the machine or appliance in the condition in which the master left it, and in which the servant found it. They have no reference to any betterments or repairs which the servant at his own suggestion and at his own peril undertakes to make.

Section 214 of Shearman & Redfield on Negligence makes plain what is meant when it is said, "If the danger is one which a servant of ordinary prudence would believe could be avoided by the use of certain additional precautions, the servant would not, by continuing his service, lose his right to recover for damages suffered by him while using such precautions." The caption of the section is as follows: *"Notice of defect without notice of danger immaterial."* But here it is not denied that both the defect and the danger incident to it were known. The defect was open and obvious, and the danger not less so, and the knowledge of its existence is admitted by the effort to repair. Nor was there any specific order from the master to go on despite the defect, but only such assurance of safety as is to be inferred from the general direction to perform the service—that is, to remove the cement—the master knowing the condition of the passageway. Other than this there was no order from the master, and no assurance of safety, or promise with respect to repairs.

The cases cited in support of the text are conclusive as to its meaning. Without exception, they turn upon the point that the servant was required to act quickly without opportunity for inspection, or there was a promise to repair, or there was a contemporaneous and urgent command from the master requiring instant obedience. *Dooner* v. *Del. Canal Co.*, 164 Penna. St. 17, 30 Atl. 269; *Irvine* v. *Flint*, 89 Mich. 416, 50 N. W. 1,008; *Carter* v. *Oliver Oil Co.*, 34 S. C. 211, 13 S. E. 419, 27 Am. St. 815; *Kane* v. *R. R. Co.*, 128 U. S. 91, 32 L. Ed. 339, 9

Sup. Ct. 16; *Lee* v. *Woolsey*, 109 Penna. St. 124; *Griffin* v. *Glen Mfg. Co.*, 67 N. H. 287, 30 Atl. 344. In not one of these cases is there a suggestion of any repair, great or small, and it is manifest that the "additional precautions" referred to in the text refer to the greater circumspection on the part of the employee.

We have held that among the unassignable duties of a master is that of exercising ordinary care to furnish reasonably safe appliances with which the work of the employee is to be performed. Suppose, in the case before us, Luck had gone to the proper officer of the Cement Company and had said: "There is a defect in the passway over which I am directed to move a loaded truck, and it must be repaired before I can discharge the duty imposed upon me." Let us suppose that the Cement Company, in the performance of its duty, had taken the plank actually used by Luck, and had made the repair in the identical manner and form resorted to by Luck, can it be doubted that the company would have been responsible for the injury which resulted? In addition to the original negligence, there would have been super-added the negligence of making an insufficient repair to a dangerous appliance. If, then, Luck, instead of making the demand of his employer, assumes the place of that employer and undertakes to discharge one of its non-assignable duties, has he not, with the assumption of the duty, taken also upon himself the burden resulting from its improper discharge?

The majority opinion says: "This is not the case of an employee voluntarily undertaking to make repairs that the employer should have made, but that of an employee undertaking to perform his duties in the face of danger, to say the most of it, by using additional precautions. In the first-named case an employee cannot recover for injuries caused by his own negligence in using, without order to do so, appliances which he knows to be dangerously defective or out of repair, or using

dangerous machinery in a perilous manner, etc., for, as the authorities say, 'Obviously he cannot recover for an injury caused by his own negligent workmanship, or bad judgment, especially where he chooses to follow his own judgment in opposition to that of the master.' 1 Shearman & Redfield on Neg., sec. 207."

It would be difficult to give an illustration differentiating the act of an employee voluntarily making a repair and thereby taking upon himself the consequence of failing to make it properly, from that of an employee undertaking to perform his duties with unsafe appliances by the use of "additional precautions," using those words in the sense of making alterations in or repairs to the place or appliance in use. As I understand the learned authors just cited, the "additional precautions" referred to are not in the nature of alterations, betterments, or changes in the structure of the appliances used, but greater caution and circumspection in the use of the defective appliances which the employer has provided. In the latter case, unless the danger be obvious to all; that is to say, if there may be an honest difference of opinion as to the peril involved in its use; the employee, when injured, will still be entitled to recover, if he used the defective machine in a careful and cautious manner. But an employee who finds a defect in a machine, and he, not being charged with the duty of repair, undertakes to assume such duty, then he comes within the law as stated in Shearman & Redfield, sec. 207, and cannot recover for an injury caused by his own negligent workmanship or bad judgment.

I am of opinion that the Cement Company was guilty of negligence, in that it failed to exercise ordinary care in providing a reasonably safe place for the performance of the duties imposed upon its employees; but that the contributory negligence of the plaintiff's intestate was of such a character as to preclude a recovery, in that when confronted with an open and obvious

risk, a peril of the most palpable and imminent character, he voluntarily assumed to step beyond the line of his duties; that in this act he was not resorting to "additional precautions" in the use of an-imperfect appliance, but was undertaking to remove the danger by repairs of his own making; that, in thus acting, he assumed the duty of his employer and discharged it at his own peril; and that, as the master would have been responsible if the repair had been made by it in the identical manner adopted by the injured servant, and the latter could have recovered, he is in this case debarred of recovery because his injury was due to his own negligent workmanship and bad judgment.

*Affirmed.*