Statement.

# Richmond.

Wilson v. Southern Railway Company.

November 19, 1908.

1. Negligence—*Mode of Doing Work—Comparison With Others.*—A party
who is doing work in the way in which he has been acustomed to do
it ought not to be adjudged negligent for not conforming to some
other method believed by some to be less perilous.

2. Negligence—*Proximate Cause—Requisites.*—The requisites of proxi-
mate cause are the doing or omitting to do an act which a person of
ordinary prudence could foresee might naturally or. probably pro-
duce the injury, and the infliction of the injury by such act or
omission.

3. Master and Servant—*Injury to Servant—Unexpected Injuries—Case
at Bar.*—A master is required to anticipate and guard against con-
sequences injurious to his servant that may be reasonably expected
to occur, but is not compelled to foresee and provide against that
which reasonable and ·prudent men would not expect to happen. In
the case at bar, the plaintiff, who was assisting in unloading 85
pound rails from a railroad car, was injured in consequence of the
turning of one of the rails under his foot while the unloading was
being done in the usual manner, and under such. circumstances as
lead to the irresistible conclusion that the injury was the result of
an accident for which no one could be held liable in damages.

Error to a judgment of the Circuit Court of Albemarle
county in an action of trespass on the case. Judgment for the
defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*George E. Walker* and *C. W. Allen,* for the plaintiff in error.

*Perkins & Perkins,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action was brought by plaintiff in error to recover of the defendant in error, the Southern Railway Company, damages for an injury alleged to have been sustained by the plaintiff while in the employ of the defendant company.

At the trial the plaintiff and one other, Tom Brown, were alone introduced as witnesses on behalf of the plaintiff, and at the conclusion of the testimony given by these witnesses the defendant demurred to the evidence, whereupon the court rendered its judgment in favor of the defendant. The sole question, therefore, to be considered is whether or not the circuit court erred in said judgment.

Both witnesses say that they were employed by one Dudley, on a "floating gang" or "extra force," for the duty of putting ballast under the track—surfacing the track—but just what was contemplated in the way of service in this employment is by no means made clearly to appear. It does, however, appear, upon the reading of the entire evidence, that this "floating gang" or "extra force" on which the plaintiff and his witness, Brown, were employed, were hired, not merely to do the regular work of a section force, but to do general section work between certain points on the main line of the defendant company—*i. e.,* their business was, along with the gang under Dudley, consisting of from six to twelve or more men, to do whatever turned up on their section, and to help any of the other gangs that became short of the needed force.

Accordingly, the plaintiff, along with the gang with which he was working, on the day of the injury of which he complains and for two weeks prior, without any complaint from him, was engaged in distributing steel rails along the defendant's main track, working in conjunction with another gang under one Murphy. There is nothing whatever in the evidence that would warrant the inference that he was being worked outside of his employment, or to show that he had any regular employment except that in the performance of which he was injured.

At the particular time of the accident to the plaintiff this com-
bined force had progressed in unloading a car of these 85-pound
rails to the point where they had been taken and thrown out
from the middle of the car down to its floor, leaving rails piled
sloping up on either side of the car, and according to the wit-
ness Brown it was desirable to have the rails thus sloping up
to the sides of the car, "in order to raise them up, so that we
could get them off easy; would not have to lift them so high."
At this moment the rails on the side of the car from which the
men were to continue taking them up and throwing them over
the side of the car had a surface at the top of the width of four
rails, or about ten inches, and just then Dudley, who was at
one end of the car, said: "Men, tear down that pile;" which the
men got ready to do, but Murphy, who was at the opposite end
of the car from Dudley, gave the order: "Watch, men, pull this
top rail." Murphy meant by "watch," to pay attention to what
his men were going to do, viz: take up the first top rail, and at
once this rail was "cracked"—i. e., the end next to Murphy
pried up so that the men could get hold of it, and from that
end the men in turn took it up; and while in the act of stepping
up on the pile of rails to throw the one in hand out of the car,
a rail from the pile under the men, for some reason unknown,
rolled down, catching one of plaintiff's feet, and breaking it
just at or below the ankle.

Murphy had no authority over the men engaged in this work
other than to direct the distribution of the rails then in hand,
and it unmistakably appears from the evidence that he was
directing the work to be cautiously done, because necessarily
attended with some danger to the men engaged. The witness
Brown states, that when Murphy said "watch," he meant "for
us to stop and pull at that end, because if you work at both ends
you are liable to cut your fingers off. You just use the word
'watch' to keep everybody noticing this end man." This wit-
ness further says that all the men understood the order given
by Murphy, and that the men were directed to handle and were

handling the rail ordered to be moved in accordance with the "rule" followed on like occasions. While this witness and the plaintiff state that they "thought it was a little dangerous," both agree that they were also of opinion at the time that by being careful the danger could be avoided. Neither, however, say that Murphy knew of the danger they apprehended, nor state any facts from which he ought to have known of the danger and guarded against it. The plaintiff states that the rails sloped up ten inches to a level, the space of the length of a man's foot, upon which the men could step from the floor, and that it was when he had put one foot up on the top of the rails, and was about to follow it with his other foot, a rail from the top pile turned and caught it. As remarked, no reason is stated why this rail turned, and neither witness makes the statement that the danger of which they speak was from the rails turning, and certainly there is nothing in the evidence whatever to justify the inference that Murphy knew, or ought to have known of this danger.

We quite agree with counsel for the plaintiff, that the doctrine of fellow servant has no application to the facts of the case; but it is also true, that the line of cases, to which belongs *Va. P. C. Co.* v. *Luck,* 103 Va. 427, 49 S. E. 577, do not apply. This is not a case where a servant was put to work in an unusually dangerous place. True, the work in a degree was dangerous, but it was work with which the plaintiff was familiar, having been engaged in it for two weeks before this accident to him occurred. His witness, Brown, who had been working with him, after stating that he had helped to distribute steel rails before this accident, was asked: "How did you distribute at that time?;" and he answered, "Just like we did this time."

This court has repeatedly sanctioned the rule, that "A party should not be adjudged negligent for not conforming to some other method believed by some to be less perilous." *Southern Ry. Co.* v. *Mauzy,* 98 Va. 692, 37 S. E. 285, and authorities cited.

In this case, even if the evidence justified the conclusion that it would have been safer for the men engaged in the work to have removed the rails from the car in a way different from that directed by Murphy, the most that can be said of the facts proved is that they but show that a mistake in judgment was made, and there is nothing in the evidence going to show that Murphy was not justified in believing, as did the plaintiff and his witness Brown, that the men would get safely over the pile of rails, only ten inches high, and cast the rail they had taken up out of the car, pursuant to his directions. In the absence of proof as to the cause of the turning of the rail which caught plaintiff's foot, the conclusion is irresistible, that it resulted from the act of the laborers themselves, in the use of their discretion—an accident that could not have been expected to happen, and for which no one could be held liable in damages.

The entire evidence fails to point out any negligence on the defendant company's part which could be fairly considered as the proximate cause of this injury. The requisites of proximate cause are: first, the doing or omitting to do an act which a person of ordinary prudence could foresee might naturally or probably produce the injury; and, second, that such act or omission did produce it. A master is required to anticipate and guard against consequences injurious to his servant that may be reasonably expected to occur; but he is not compelled to foresee and provide against that which reasonable and prudent men would not expect to happen. *Va. I. C. & C. Co.* v. *Kiser,* 105 Va. 695, 54 S. E. 889.

We are, therefore, of opinion, that the judgment of the circuit court in favor of the defendant, upon its demurrer to the evidence in this case, is without error, and should be affirmed.

*Affirmed.*