## JARMAN v. PHILADELPHIA–DETROIT LINES, Inc., et al.
### No. 4989.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1942.

William L. Thorp, of Rocky Mount, N.. C. (Isaac D. Thorp, of Rocky Mount, N.. C., on the brief), for appellant.

Francis E. Winslow, of Rocky Mount,. N. C. (Kemp D. Battle and Herman S.. Merrell, both of Rocky Mount, N. C., on· the brief) for appellees.

Before SOPER, DOBIE, and NORTH-- COTT, Circuit Judges.

SOPER, Circuit Judge.

The plaintiff in this case brought suit for personal injuries received while a passenger in an automobile which came into· collision with an automobile truck that was. hauling a trailer loaded with four automobiles. The District Judge directed a verdict for the defendant, and the only question; for decision is whether there was substantial evidence to support the plaintiff's contention that the accident was caused by the negligent operation of the truck. The· plaintiff offered evidence to sustain his contention, but the District Judge adopted the· view of the defendant that this evidence· was unworthy of belief because it was contrary to established natural laws.

. The explanations of the accident offered' by the parties to the case differed sharply in main outline, the plaintiff stating that the accident was caused as the vehicles approached one another on the highway when the truck left its side of the road to avoid' collision with a cow and crossed in front of the plaintiff's car; and the defendant declaring that the truck did not change di-- rection to avoid the cow but veered to the· left only when the driver of the car applied a faulty brake and left its side of the· road and crossed in front of the truck.

The evidence on the part of the plain-- tiff showed in substance that the accident· occurred in the following manner: On the· morning of September 17, 1941, the automobile, proceeding north on the east side· of the highway near Battleboro, North Carolina, came over the crest of a hill at a· speed of 50 miles an hour and began a descent to a culvert at the bottom of the dip· 500 feet distant. The truck and trailer,. traveling south on the west side of the road' at about the same speed, had crossed the· crest of the hill 800 feet north of the same:

culvert. As the vehicles neared one another, a cow, which was on the shoulder of the truck's side of the road in full sight of both drivers as they began the descent, approached the highway and entered it in front of the truck. The driver of the truck then turned it sharply to the left and crossed the center of the road into the path of the approaching car. The driver of the car immediately applied his brakes, reducing the speed to 25 miles an hour, but realizing that he could not stop in time, released his brakes at a distance from 10 to 20 feet from the truck and swerved sharply to his left, with the result that the rear corner of the car collided with the front of the truck, damaging the back end and right side of the car, and slightly damaging the left front headlamp and fender of the truck. The truck was struck in front and was not diverted from its course but crossed the road and came to a stop with its front wheels off the east side of the highway. The car was swung around by the collision and continued to a point 20 feet beyond the west side of the highway where it stopped facing in an easterly direction.

The occupants of the car were injured and taken to the hospital. While there they were visited by the driver of the truck who stated that he thought, as he approached the cow, that he could swerve to his left to avoid it and get back on his side of the road in time to avoid collision with the car, but that he turned the truck so sharply to the left that he could not execute this maneuver.

It was admitted by the defendant that when the driver of the truck first saw the cow at a distance of several hundred feet, the truck was then traveling in excess of 30 miles an hour, the limit imposed upon motor vehicles with trailers by Section 103, Chapter 407 of the Public Laws of North Carolina 1937, Michie's Code, Section 2621 (288) which provides that any speed by such a vehicle in excess of that limit is prima facie unreasonable or imprudent. This admission is of significance in determining whether the driver of the truck was negligent in the management of the vehicle in the descent of the hill, if the jury should find, as the witnesses for the plaintiff assert, that the truck was driven to its left side of the road in order to avoid collision with the cow.

The evidence thus outlined was of course sufficient, if unexplained, to take the case to the jury, and the defendant to offset it

offered the testimony of an expert physicist. A hypothetical question, purporting to summarize the plaintiff's evidence was framed, wherein the expert was asked to assume that as the car approached the scene of the accident, it was proceeding at a speed of 50 miles per hour and that the driver, upon seeing the truck, applied his brakes and gradually reduced his speed to 30 miles an hour until he reached a point on the east side of the road 10 or 12 feet short of the defendant's truck which had turned to the left and was then athwart the road, and that at that point the driver of the car released its brakes and turned it sharply to the left so that the rear end of the car collided with the right front fender of the truck and then swung around to the left, and the car, facing east, moved backwards in a westerly direction for a distance of 46 feet. The damage to the vehicles above described was shown by photographs; the weight of the car was given at 3,000 pounds and that of the truck and trailer from 23,000 to 25,000 pounds, and it was shown that the truck was not pushed laterally to the northward at all and came to a dead stop with its front wheels and bumper just off the east side of the pavement. In answer to the question the expert testified that these facts would not be consistent with the laws of physics, because there was no lateral movement of the truck in consequence of the collision, and because the direction of the car could not have been changed, when it was only 10 or 12 feet from the truck and going at 30 miles per hour, so as to strike the truck with its rear fender rather than its front. The defendant's version of the accident was then stated in the form of a hypothetical question to the expert, who testified that this account of the accident was consistent with the natural laws of physics.

This testimony in our opinion did not demonstrate that the plaintiff's testimony was so incredible as to require a directed verdict. We recognize the rule that in federal courts a verdict may be directed against a party although some evidence may have been adduced on his behalf, if the evidence, taken as a whole, is so overwhelmingly against him that reasonable men could not possibly find a verdict in his favor. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 216; Pence v. United States, 316 U.S. 332, 62 S.Ct. 1080, 86 L.Ed. 1510; Gorham v. Mu-

tual Benefit Health & Accident Ass'n, 4 Cir., 114 F.2d 97; Southern R. Co. v. Bell, 4 Cir., 114 F.2d 341; Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724. Moreover, evidence may be completely disregarded as without probative force if it is manifestly incredible when tested by accepted physical laws in the light of incontrovertible facts. The rule is thus stated in Travelers' Indemnity Co. v. Parkersburg Iron & S. Co., 4 Cir., 70 F.2d 63, 64, 65:

" * * * The rule is well settled, of course, that evidence contrary to established physical facts has no probative value. U. S. v. Diehl [4 Cir.], 62 F.2d 343; Atlantic Coast Line R. Co. v. McLeod [4 Cir.], 11 F.2d 22. But to justify the ignoring of evidence under this rule the evidence ignored must be utterly at variance with well-established and universally recognized physical laws and therefore inherently impossible. See Wasiota & B. M. R. Co. v. Hall, 167 Ky. 819, 181 S.W. 629; Wolf v. City R. Co., 50 Or. 64, 85 P. 620, 91 P. 460, 15 Ann.Cas. 1181. The rule means merely that courts are not required to stultify themselves by giving serious consideration to what every man knows to be untrue. It does not mean that they must determine for themselves, from the testimony of experts or otherwise, the truths of science which may be involved in cases before them, and ignore testimony that does not coincide with their conclusions. Questions of fact are questions for the jury; and they do not become questions for the court merely because their solution may require scientific knowledge or expert opinion."

But it seems quite obvious that the circumstances of the accident, as related by the plaintiff's witnesses, were not so fixed and certain as to permit precise and incontrovertible calculations to be made as to the effect of the speed, or change of direction of the car and truck or the force of the collision, much less to accord absolute verity to an expert opinion based thereon. It is certain that after the accident, each vehicle was on its wrong side of the road facing east, and that the right rear end of the car came in contact with the front end of the truck, causing no damage to the side of the truck and exerting no lateral pressure thereon; but all else is incapable of precise determination. The exact speeds of the vehicles before and at the moment of the collision were not known, since the witnesses expressed only an estimate or an approximation. The exact distance between the two cars at the moment when the automobile, according to the plaintiff's testimony, was turned to the left was not known; nor the exact effect upon this particular automobile from the sharp turning of the steering wheel. It must be borne in mind that both drivers were confronting a sudden and unlooked for emergency and were obliged to act with speed under the stress of the moment which prohibited an observation of the exact situation. Under such circumstances it would be an unwarrantable interference with the plaintiff's rights to withdraw his case from the consideration of the jury and in effect submit it to the decision of an expert employed by the defendant. We should reach this conclusion even though the hypothetical question had correctly and completely summarized the testimony on behalf of the plaintiff; and the conclusion is the more necessary when it is observed that the expert was asked to assume that the speed of the car just before the collision was 30 miles an hour, although some of the plaintiff's testimony indicated that it was 25 miles an hour, and was also asked to assume that the turning of the automobile to the left took place when it was between 10 to 12 feet from the truck, although there was testimony on behalf of the plaintiff that this distance was from 10 to 20 feet. In our view, the case was one eminently suited to the determination of a jury and did not present the extraordinary situation which sometimes justifies a court in ruling that the testimony of a witness is manifestly impossible and untrue and should therefore be disregarded.

The judgment of the District Court must be reversed and the case remanded for a new trial.

Reversed and remanded.