**FORE v. SOUTHERN RY. CO.**

**No. 5978.**

United States Court of Appeals Fourth Circuit.

Submitted on briefs Nov. 11, 1949.

Decided Dec. 13, 1949.

George E. Allen, Ashby B. Allen, Richmond, Va., Garland & Carson, Farmville, Va., and Allen, Allen & Allen, Richmond, Va., on the brief, for appellant.

Thomas B. Gay, Lewis F. Powell, Jr., and H. Merrill Pasco, Richmond, Va., on the brief for appellee.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

William Fore, plaintiff-appellant, instituted in the District Court of the United States for the Eastern District of Virginia a civil action under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, hereinafter called the Act, against the Southern Railway Company, hereinafter called Southern, defendant-appellee. Southern, at the close of plaintiff's evidence and again at the close of all the evidence, moved the Court for a directed verdict in its favor. The District Court, reserving decision on these motions, submitted the case to the jury, which returned a verdict in favor of plaintiff for $3,000. Plaintiff, in his complaint, claimed damages of $25,000. Later, Southern moved for judgment in its favor notwithstanding the jury's verdict and this motion was granted by the District Court. Fore has duly appealed. Thus, the sole question before us is whether there was sufficient evidence to take to the jury the question of negligence by Southern contributing to the injury to Fore. We think the District Court correctly answered this question in the negative.

Fore was employed as a machinist's helper by Southern at Richmond, Virginia, where his injuries were alleged to have been received. Fore testified that he dislocated and suffered permanent injury to his shoulder while using a wrench 12″ in length to unscrew one of the nuts on the bolt holding the locomotive signal valve to the bracket pursuant to the order of general foreman Ray, after Ray and machinist Pharr had been unable to do so. Ray and Pharr denied they attempted to unscrew the nut before Fore was injured or that he was at any time requested to unscrew it. Their testimony was that it was not Fore's job to unscrew such nuts but that as Pharr was in the act of applying the wrench to one of the nuts, Fore, who was six feet five inches in height, and therefore fourteen inches taller than the five feet three inches Pharr, voluntarily reached up and took the wrench from Pharr, saying: "You are not tall enough to reach anything," and injured his shoulder with the first push he made in attempting to unscrew the nut in question.

The signal valve in question was positioned on the right side of a railway locomotive below the cab. There was an iron bracket bolted to the underside of the floor of the cab, and to this bracket the signal valve was attached by two ½″ or ⅝″ bolts and nuts which held the top of the signal valve to the bracket. The bolts and nuts holding the signal valve to the bracket, which had to be unscrewed in order to detach the signal valve from the bracket, were between 5-½ and 6 feet from the floor of the roundhouse, on which Fore stood beside the locomotive. And Fore, as we have stated, was 6 feet 5 inches in height, a very tall man.

It might be noted that the alleged injury occurred on October 27, 1946, Fore remained in the employment of Southern, except for periodic absences, until August 30, 1947, a period of over ten months; yet Fore filed no claim whatever with Southern on account of the injury until some time after his employment with Southern had

terminated, and this civil action was not instituted until November 10, 1948.

We are quite familiar with the rule that the evidence here must be appraised in the light most favorable to Fore and that the Supreme Court, in cases arising under the Act, has gone very far in decisions that are liberal to the injured employee. See, Blair v. Baltimore & Ohio Railroad Co., 323 U.S. 600, 605, 65 S.Ct. 545, 89 L.Ed. 490; Tiller v. Atlantic Coast Line Railway Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967. And see, also, the very recent opinion of Mr. Justice Black; in Brown v. Western Railway of Alabama, decided November 21, 1949, 70 S.Ct. 105.

On the other hand, the Supreme Court has made it crystal clear that under the Act the employer is not an insurer and that the injured employee can recover only upon proof of negligence on the part of the employer which is the proximate cause of the injury to the employee. Said Mr. Justice Black, in Wilkerson v. McCarthy, 336 U.S. 53, 61, 69 S.Ct. 413, 417: "Much of respondents' argument here is devoted to the proposition that the Federal Act does not make the railroad an absolute insurer against personal injury damages suffered by its employees. That proposition is correct, since the Act imposes liability *only for negligent injuries.*" (Italics ours.)

See, also, Myers v. Reading Co., 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615. In Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 32-33, 64 S.Ct. 409, 411, 88 L.Ed. 520, Mr. Justice Murphy stated: "Petitioner was required to present *probative facts from which the negligence and the causal relation could reasonably be inferred.* 'The essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458; Atchison T. & S. F. Ry. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896." (Italics ours.)

And, from the opinion of Mr. Justice Reed, in Brady v. Southern Railway Co.,

320 U.S. 476, 479-480, 64 S.Ct. 232, 234, 88 L.Ed. 239, we quote: *"The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case, the jury. * * ** When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court *should determine* the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims." (Italics ours.)

Nor are we bound to accept evidence that is either inherently incredible or is plainly opposed to common sense and practical experience in the light of the physical facts involved. Thus, in Jarman v. Philadelphia-Detroit Lines, 131 F.2d 728, 730, Circuit Judge Soper, speaking for our Court, stated: "Moreover, evidence may be completely disregarded as without probative force if it is manifestly incredible when tested by accepted physical laws in the light of incontrovertible facts."

See, also, Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 35 L.Ed. 501; Maners v. Ahlfeldt, 8 Cir., 59 F.2d 938, 939; Atlantic Coast Line Railway Co. v. McLeod, 4 Cir., 11 F.2d 22; Norfolk & Western Railway Co. v. Strickler, 118 Va. 153, 86 S.E. 824.

The only evidence of any consequence on behalf of Fore was his own self-serving, uncorroborated opinion that the customary method of taking off nuts was with an acetylene torch. He testified as follows:

### Direct Examination

"Q. Do you know what the customary method was of taking these nuts off where they were either corroded or rusted or on very tight? A. Yes, sir.

"Q: What was that? A. Remove them with an acetylene torch.

"Q. Had you ever before seen a wrench to take off a nut of this kind in the particular position that it was in? A. No,

sir; they are always removed in a close place with an acetylene torch."

Cross-Examination

"Q. Did you ever work on the removal of one (signal valve) before this occasion? A. Yes, sir.

"Q. Did you use a wrench or an acetylene torch? A. An acetylene torch.

"Q. Did you use a wrench first to see whether you needed a torch? A. No, sir.

"Q. You immediately went and got the acetylene torch? A. Yes.

"Q. And that was the way you removed all of the nuts on the signal valve? A. Yes, sir, especially when they were in this position that this one was in. You could burn it off and most of them are corroded anyway when they are around heat and soot like that and get rusted and brittle like that.

"Q. You remove them all with an acetylene torch? A. Yes, sir.

"Q. That is the only way you ever saw it done? A. That is the only way I ever helped do it."

When asked if he considered "that it was dangerous to use the wrench to remove this nut?", he answered: "No, sir, but it proved to be dangerous."

Fore was not helped by the testimony of Tom Brown, a witness on his behalf, who testified that he had been a shop steward of Southern with thirty-two years experience. When asked: "Do you know how these bolts were customarily burned off?" he replied: "Well, they wasn't customary to burn those bolts off." Again; "What was the custom? A. They generally take them off with a wrench." He further testified:

"Q. If you had to take one of those bolts off what would you use, Tom, to begin with? A. Take a half inch wrench and take it off.

"Q. Can a good man wring it off without any trouble, even if it is tight? A. Yes, if it ain't up too high or a place you can get hold of it, you can wring it off.

"Q. How high is this signal valve on this locomotive 1208? How high is it approximately from the ground? A. I

don't know. It may be about five foot; I would say about five foot and a half or five or six foot from the ground. It ain't quite six foot. It is just about the top of my head.

"Q. And how tall are you, Tom? A. About five foot six."

This testimony of Brown was corroborated in every respect by numerous witnesses for Southern, notably, Ray, Pharr, Taylor and Wade.

Further, Taylor, with forty-nine years of experience in railroad shops, testified he had never used a torch in removing nuts from a signal valve, though he cleaned and inspected them every six months. Taylor testified that it was not wise to use a torch near a signal valve "because you have two rubber diaphragms in that valve and the heat would destroy that diaphragm; also you would burn this ear off this valve before you cut the nuts off." Wade, General Foreman of the Locomotive Department of the Acca Yards of the Richmond, Fredericksburg and Potomac Railroad (with forty-four years experience), testified that he had never seen an acetylene torch used to remove such nuts, that the torch would injure both the interior of the signal valve and the thin metal strips at the top, and that such use of an acetylene torch was not only not customary but was dangerous to the workmen. Ray testified to "the detrimental effects of the heat of the torch." Even Tom Brown, Fore's own witness, testified: "There is something in this valve here that they couldn't put a torch that hot by the valve * * * You couldn't afford to put a torch that close to that thing. You will burn the valve, your signal valve. You would get it so it wouldn't blow or get it so it wouldn't work right anyway."

Significant, too, in this connection is Fore's testimony:

"Q. Who is Jim? A. Jimmy Pharr. He told me we would have to change the signal whistle on that engine so I picked up the tools which was my duty and went on back and handed him a ⅝ wrench.

"Q. What was the size of this nut that we are talking about? A. ⅝.

"Q. What tools did you have about your possession and carry? A. A helper, as a rule, always has a hammer and a chisel and one or two small wrenches and he has his larger ones laying out by the engine if he needs them.

"Q. Were they the tools that you had when he called you to come to this engine? A. Yes."

As Judge Hutcheson stated in his letter to counsel explaining his decision in this case: "If his (Fore's) contention concerning the custom and greater safety of the use of a torch is correct, then it is worthy of note he did not carry a torch as a part of his equipment when directed to bring the necessary tools. * * * If it were the customary method, why did he not bring to the job a torch?"

There is not a scrap of evidence to show that the nut in question was corroded. The uncontradicted testimony of Ray and Pharr is to the contrary and shows that, after the injury to Fore, Ray removed the nuts in question with a wrench and that these identical nuts were installed on another signal valve. And Fore's own witness, Tom Brown, testified:

"Q. How about any of these bolts getting corroded? A. I have never seen no bolt on a signal that got corroded in my life."

In Brady v. Southern Railway Co., 320 U.S. 476, 484, 64 S.Ct. 232, 236, 88 L.Ed. 239, Mr. Justice Reed closed his majority opinion with these words: "The mere fact that with a sound rail the accident might not have happened is not enough. *The carrier's negligence must be a link in an unbroken chain of reasonably foreseeable events.*" (Italics ours.)

Or, as District Judge Philips said, speaking for the Circuit Court of Appeals for the Eighth Circuit, in St. Louis, Kansas City & C. Railroad Co. v. Conway, 156 F. 234, 237: "An injury which was not foreseen, and could not be reasonably anticipated as the probable result of an act of imputed negligence is not actionable."

See, also, Cheffey v. Pennsylvania Railroad Co., D.C., 79 F.Supp. 252, 258; Wilson v. Southern Railway Co., 108 Va. 822, 826, 62 S.E. 972; 35 Am.Jur. 944. Here Fore offered no evidence whatever even to prove any element of foreseeable danger in carrying out the order in question. Surely it would seem a matter of common sense and ordinary experience that there was no reasonably foreseeable danger when (under the facts of this case) a young giant, six feet five inches tall, weighing two hundred and thirty-five pounds and in perfect health, is ordered to unscrew a small nut, easily within his reach, with a wrench, which is the almost universally accepted tool for that purpose.

The judgment of the District Court is affirmed.

Affirmed.