James C. ROGERS, Plaintiff-Respondent,

v.

Guy A. THOMPSON, Trustee, Missouri Pacific Railroad Company, a Corporation, Defendant-Appellant.

No. 44595.

Supreme Court of Missouri, Division No. 1.

Nov. 14, 1955.

Motion for Modification of Opinion and for Rehearing or to Transfer to Court en Banc Denied Dec. 12, 1955.

Harold L. Harvey, Oliver L. Salter and Donald B. Sommers, St. Louis, for appellant.

Mark D. Eagleton, Thomas F. Eagleton, and Leland Jones, St. Louis, for respondent.

VAN OSDOL, Commissioner.

Plaintiff, James C. Rogers, instituted this action under the Federal Employers' Liabil-

ity Act, 45 U.S.C.A. § 51 et seq., for personal injury alleged to have been sustained by him July 17, 1951, when, during the course of his employment, he was burning weeds on defendant's right of way near Garner, Arkansas, and fell at one of defendant's drainage culverts. Plaintiff had verdict and judgment for $40,000 damages, and defendant has appealed.

Plaintiff alleged that he, as defendant's employee, was engaged in burning weeds by the use of a hand torch at a point a short distance north of Garner Crossing; that in so doing he was required to work at a place in close proximity to defendant's tracks whereon trains were passing; and that a train caused the fire from the burning weeds to come so dangerously close to him that he was obliged to retreat and move quickly from the place where he was working and to use as a place of work a part of defendant's right of way that was covered with loose and sloping gravel which did not provide adequate and sufficient footing for plaintiff to thus move or work under the circumstances. Plaintiff further alleged "that the said method of doing said work and the place of work thus provided became and were unsafe and dangerous and defendant in thus adopting said method and furnishing said place of work, failed to exercise ordinary care and was guilty of negligence and by reason thereof, plaintiff was caused to fall and to be injured thereby, all of which directly and proximately resulted, in whole or in part, from the negligence of the defendant as aforesaid."

Inasmuch as defendant-appellant's initial contention is that plaintiff failed to make out a case submissible to a jury and the trial court erred in overruling defendant's motion for a directed verdict, we will examine the evidence tending to support plaintiff's claim.

Plaintiff, twenty-four years old when injured, fell and was injured at a culvert approximately two hundred fifty yards north of Garner Crossing, a public crossing over defendant's line. At this point defendant's double-track line lies in a north-south direction. The tracks, consisting of rails and ties resting on gravel or crushed rock ballast, are supported by an earthen "dump."

Plaintiff had become the employee of defendant as a section laborer May 21, 1951; and in the morning of July 17, 1951, he with others of the section crew in charge of one Howdershell as foreman had started working near McRae, a short distance south of Garner Crossing. The section men worked until ten-thirty between McRae and Garner Crossing, at which time the foreman directed others of the crew to do some work three or four hundred yards north of the crossing. However, plaintiff was given the task of burning weeds and other vegetation on the shoulder, and on an area two and a half or three feet wide down over the crest of the incline of the dump. Plaintiff was told to begin just north of the crossing and burn the vegetation up to a point several hundred yards north of the crossing. The vegetation was dry. It had been withered and killed by chemicals. Plaintiff was given a torch consisting of a quart container with a spout on one side and a three-foot handle on the other. The spout was stuffed with waste for a wick, and the container was filled with kerosene and "white gasoline mix." Plaintiff had not theretofore seen anyone attempt to fire vegetation with that sort of device. He said that normally it is done with a flame thrower wherein the operators sit fifteen or twenty yards ahead of the flame. Flame throwers burn the whole right of way. Plaintiff had seen a flame thrower used. This was long before he was employed by defendant. Plaintiff does not know what the section crew's duty was when the flame thrower was used. Defendant's foreman testified a machine had been used as a flame thrower in burning weeds from 1928 or 1929 to early 1950. The machine caused too much fire. It burned hay, pasture and woodland on properties adjoining the right of way. The section men had to follow along and fight fire. The machine was later converted into a sprayer to kill weeds and after they are killed, the section men burn them. They use a torch or "something that is handy." They now have less fire and fire fighting.

Pursuant to instructions, plaintiff had fired the weeds, "just spots," along the west shoulder and west side of the incline up to a point thirty or thirty-five yards south of the drainage culvert when a train came from the south on the east (northbound) track.

In firing the weeds, plaintiff had been walking two and a half or three feet from the west ends of the ties supporting the rails of the west (southbound) track. There is a flat place, "a path," along there—a shoulder three to three and a half feet wide—between the edge of the sloping ballast and the crest of the dump.

Having heard the train whistle for the crossing and having seen that the train was on the east track, plaintiff quit firing the weeds, set the torch on a tie west of the west rail of the west track and ran northwardly to a point "right next" to the culvert. He knew the culvert was there. He had noticed it when he "was running north." But he paid no attention to it. He had forgotten it at the time. And, ignoring the fire, plaintiff directed his attention to the passing train. Plaintiff knew there would be a "wind come along behind" a passing train; but, there being a track between the fire and the train, he "didn't think the wind would affect it too much." Plaintiff explained how he was injured as follows, "At the time I thought I was far enough away, that I was plenty far enough to clear myself of the fire or any danger of the fire and it was time to start to watch these journals. So I set my torch down on the end of the tie, and was standing out on the flat surface, watching the train go by. After the train had gotten approximately half or two-thirds of the way back, I felt this heat on my face, on the side of my face. I turned to see what had happened, and it was fire right up in my face. I threw my left arm over my face and started turning to the west, to the north, backing away rapidly from the fire, and that is when I walked in on this culvert and slipped and fell."

Plaintiff further testified his foreman had instructed that when trains approached the

section men were to "get clear of what we were doing and stand and watch the trains go by for hot boxes. . . . He (the foreman) said at all times he wanted some of (the) men on one side of the track and some on the other." The foreman had also said, " 'Don't stand even on the end of the ties or close to the other rail while there is a train on the opposite rail, because the interference, the sound of one train would deaden the sound of another one that possibly would come from the other way.' " The foreman had said to " 'always stand on the shoulder.' " Plaintiff testified there was no flat surface or walkway over the top of the culvert where he was injured. A flat pathway on the shoulder including the ends of culverts was "supposed to be" kept free of ballast, so "the men would have a safe place to walk." He said that "normally" there is a flat place two or two and one-half feet on which to walk across a culvert; on this one there was nothing but crushed rock—no flat surface. "It (the ballast) rolled out from under me." Vibration of trains had shaken crushed rock down onto the culvert so as to make a sloping incline.

Plaintiff, on cross-examination, testified that, when the foreman told him and others of the section crew to suspend their labors when a train approached and watch for hot journal boxes, he did not understand that he, plaintiff, when burning weeds, was to completely ignore the fire. Plaintiff "never thought he (the foreman) meant anything like that." Plaintiff said he knew it was his primary duty to watch the fire.

Plaintiff, on cross-examination, further testified as follows,

"Q. When you slipped, you say the gravel slipped out from underneath you? A. Yes.

"Q. This is that portion of the gravel that is right up next to the ties, isn't it? A. Yes, sir.

"Q. There is gravel right up next to those ties everywhere along the railroad, isn't there? A. Yes, sir.

"Q. That is the proper way, I believe, that a railroad is built so far as you know, isn't it? A. Yes. * * *

"Q. You say the section gang keeps a path there for themselves to walk on? A. It is there, yes, sir.

"Q. On both sides of the right-of-way? A. Yes, that's right.

"Q. Every place on the railroad you have been? A. No, sir, not every place.

"Q. Well, all along the right-of-way on that section you worked on? A. Yes; there is a flat surface of dirt other than where the culverts are.

"Q. Other than where the culverts are? A. Yes.

"Q. So anytime you come to a culvert there isn't any. Is that right? A. There is not a dirt, flat surface.

"Q. At any culvert? A. To a certain extent; I mean not like a shoulder is."

Defendant's foreman testified that, "generally speaking," there is a shoulder eighteen inches to three or four feet wide along the outer edge of the ballast. There is no ballast on the shoulder unless "there would be loose rock kicked out. * * * We clean it up if we have a slide." The section men keep the ballast "lined up (approximately) straight."

As stated, defendant-appellant contends the trial court erred in overruling defendant's motion for a directed verdict. It is said there was no proof that an accident and injury could have been reasonably foreseen from the manner in which the drainage culvert was constructed and maintained; and there was no evidence that plaintiff's alleged injury was proximately caused by the method adopted by the defendant in burning the weeds or that such an injury or other danger could have been reasonably foreseen in the method used by defendant.

As to the issue of negligence—the facts in the instant case are not like those in Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444, cited by plaintiff-respondent, wherein the employee was ordered to work at a particular place where there was a narrow footing and no guardrail on a bridge eighteen feet above the ground, and the wrench he was required to use, unless disengaged when the doors of a hopper car were opening, was likely to spin with the shaft of the hopper and throw the employee off balance. Defendant was not absolved from its continuing duty to provide the employee with a reasonably safe place to work by the fact that the work there required was fleeting or infrequent. The nature of the task which the employee undertook, the hazards which it entailed, the effort which it required, the kind of footing he had, the space in which he could stand, the absence of a guardrail, the height of the bridge above the ground, the fact that the car could have been opened or unloaded near the bridge on level ground—all these were facts and circumstances for the jury to weigh and appraise in determining whether the employer, in furnishing the employee with that particular place in which to perform the task was negligent. Nor are the facts of the instant case like those in Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 85 S.W.2d 527, wherein the employee was required to work alternately between the top of a rock pile where he was safe, and on the ground by the rock pile in the performance of duties which distracted his attention from the danger of trucks passing or backing through or into his place of work, and no warning was given or other precaution taken to protect him from the danger. In Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W. 2d 418, cited by plaintiff-respondent, there was no catwalk, platform or guardrail on a trestle so as to guard trainmen against the danger of falling to a creek thirty-four feet below. In Luthy v. Terminal R. Ass'n of St. Louis, Mo.Sup., 243 S.W.2d 332, there was no light at plaintiff's place of work, and plaintiff working in the dark fell over a black switch mechanism when attempting to board a car.

As to the issue of causal connection—the mere fact that injury follows neg-

ligence does not necessarily create liability—causal connection between negligence and injury is necessary. The test of whether there is causal connection is that, absent the negligent act the injury would not have occurred. Moreover, in order that negligence be actionable, there must not only be causal connection so that the injury would not have occurred but for the negligence, but such negligence must also be a proximate (legal) cause of the injury. Foreseeability of injury is sometimes employed as a test of proximate cause; but if it reasonably could have been foreseen or anticipated that an act of commission or omission was likely to injure someone, then it makes no difference that the manner in which the act did injure someone might not have been foreseen or anticipated and the actor may be held liable for any injury which, after the occurrence, appears to have been a natural and probable consequence of his act. Kimberling v. Wabash R. Co., 337 Mo. 702, 85 S.W.2d 736; Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872; Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600; Mrazek v. Terminal R. Ass'n of St. Louis, 341 Mo. 1054, 111 S.W.2d 26; Gray v. Kurn, 345 Mo. 1027, 137 S.W.2d 558; Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824; Fassi v. Schuler, 349 Mo. 160, 159 S.W.2d 774; Springer v. Security Nat. Bank Savings & Trust Co., Mo.Sup., 175 S.W.2d 797; Branstetter v. Gerdeman, Mo. Sup., 274 S.W.2d 240.

The principle of the essentiality of proximate causation has been recognized by the Supreme Court of the United States in Federal Employers' Liability Act cases. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Brady v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Reynolds v. Atlantic Coast Line R. Co., 336 U.S. 207, 69 S.Ct. 507, 93 L.Ed. 618. As pointed out in Luthy v. Terminal R. Ass'n of St. Louis, supra, Mo.Sup., 243 S.W.2d 332, the Brady case (a five to four holding) involved facts arising prior to the 1939 amendment to the Federal Employers' Liability Act. However, the 1939 amendment did not affect the rule that liability must be based on neg-

ligence—a proximate cause of the injury. In Tiller v. Atlantic Coast Line R. Co., supra, the court held that the Act and its amendment of 1939 abolished the post— Priestly v. Fowler[1] defenses (the fellow servant—assumption of risk rule) and authorized comparison of negligence instead of barring the employee from all recovery because of contributory negligence. But the Act and the amendment "leave for practical purposes only the question whether the carrier was negligent *and whether that negligence was the proximate cause of the injury.*" (Our italics).

In the Brady case [320 U.S. 476, 64 S.Ct. 236], plaintiff's decedent, assisting in a switching movement, was thrown from the step of a gondola car to instant death when the trucks of the car hit "the wrong end" of a closed derailer on the east rail of the switch track. The opposite (west) rail of the switch track was defective. The west rail was so worn on the top and sides that experts were of the opinion it permitted the thrust of the east wheels of the trucks, as they rose over "the wrong end" of the derailer, to force the flange on the west wheels over the defective rail and so to derail the cars, when no such derailment would have occurred, " 'nine times out of ten, if the best type' " rail was in use. The misuse of the derailer was an act of negligence, but it was mere speculation as to whether that negligence was chargeable to decedent or another. Plaintiff, therefore, could not recover on the theory that defendant was negligent in setting the derailer without warning decedent. As to negligence in using a defective rail—the rail was sufficient for ordinary use, and defendant was not obliged to foresee or guard against misuse of the derailer, although a witness with years of experience as a brakeman recalled instances when trains were improperly backed over a closed derailer. The Supreme Court of the United States was of the opinion that the misuse of the derailer was entirely disconnected from the earlier act of defendant in placing the weak rail in the track. The unsound rail was not a proximate cause of the accident. The mere fact that with

[1] Ex.1837, 3 M. & W. 1.

a sound rail the accident would not have happened was not enough.

■ In our case, plaintiff's testimony leaves much unsaid as to the actual condition at the west end of defendant's drainage culvert, and as to the place where defendant was stepping when he fell. Plaintiff's testimony at best tends to show the fact that generally there was a level shoulder between the edge of the ballast and the crest of the dump supporting defendant's tracks. This level shoulder was supposed to be kept there so that section men might have a safe place to walk when working. There were flat surfaces across the ends of culverts, but not "like" the shoulders were. Considered from a standpoint most favorable to plaintiff, it reasonably could be said the flat surface across the west end of the culvert in question was narrower than elsewhere along the shoulder, and the vibration of trains had loosened and shaken down some gravel or crushed rock so as to make an inclined surface down to or near the end of the culvert. Plaintiff's testimony, which we have quoted in question and answer form, supra, was support for a conclusion that plaintiff slipped on gravel "right up next to the ties"; however, at another time while testifying, plaintiff said, "I didn't back up east, next to the rails." Even so, the condition of the culvert was not shown to have been unsafe for workmen in the ordinary use of the area in maintaining the tracks, including the firing and attending the firing of "spots" of weeds along the shoulder and incline of the dump. Can it be correctly said that a reasonably careful and prudent person would assume that loose gravel or crushed rock, shifted down on the shoulder at the culvert by the vibration of trains, would subject section men to an unreasonable hazard, accustomed as section men are to moving over tracks, ties and ballast in their multiple duties in the maintenance of the line? It is established that the standard of care must be commensurate to the dangers of the business. Less diligence is required where the danger is slight than where great. Frizzell v. Wabash R. Co., 8 Cir., 199 F.2d 153. It is

true plaintiff was confronted by an emergency, in a sense; but, as we shall see, it was an emergency brought about by himself.

Nor was there evidence tending to show that the use of the hand torch (in itself) was an unsafe method or a more dangerous method than any other in burning weeds. See and compare Fore v. Southern Ry. Co., 4 Cir., 178 F.2d 349. Of course, it could be asserted that fire itself is a hazard. But it is not contended that defendant was negligent in starting a fire. And the use of the hand torch in firing the weeds did not make the fire dangerous. Defendant did not start a fire on its right of way and abandon it to sweep at large in changing winds or in swirls of wind caused by passing trains. Defendant had detailed plaintiff to fire the weeds; and, according to his testimony, plaintiff knew it was his primary duty to watch the fire.

■ It seems to us that the fire—unattended and unwatched as it was—swept northwardly by the wind of the passing train toward defendant's culvert so that plaintiff (who had left the fire unattended) was obliged to move blindly away and fall, was something extraordinary, unrelated to, and disconnected from the incline of the gravel at the culvert. And now, after the event, we are obliged to say we think plaintiff's injury was not the natural and probable consequence of any negligence of defendant. And if there was negligence in failing to maintain a sufficiently wide path across the culvert or in permitting that path to become covered with crushed rock or gravel, still plaintiff's evidence is completely lacking in probative facts supporting a conclusion that defendant's negligence, in whole or in part, contributed to plaintiff's injury. Brady v. Southern R. Co., supra, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Atlantic Coast Line R. Co. v. Anderson, 5 Cir., 221 F.2d 548; Chesapeake & O. Ry. Co. v. Burton, 4 Cir., 217 F.2d 471; Gill v. Pennsylvania R. Co., 3 Cir., 201 F.2d 718; Fore v. Southern Ry. Co., supra, 178 F.2d 349; Wolfe v. Henwood, 8 Cir., 162 F.2d 998;

Seaboard Air Line R. Co. v. Gentry, Fla., 46 So.2d 485; Restatement, Torts, § 433.

The judgment should be reversed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.